# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2138

_____

Wayne Newton; Wilbur Kehrli;                    *
J. David Nichols; Carol L. Hans,                *
                                                *
    Plaintiffs - Appellants,                  *
                                                *
Irvin Fox,                                      *
                                                *
    Plaintiff,                                *
                                                *
James Gregory,                                  *
                                                *
    Plaintiff - Appellant,                    *
                                                *
Jan Houck,                                      *   Appeal from the United States
                                                *   District Court for the
    Plaintiff,                                *   Northern District of Iowa.
                                                *
Mark Armentrout; Darrell Sweet, on              *
behalf of themselves and all others             *
similarly situated; David E. Wood,              *
                                                *
    Plaintiffs - Appellants,                  *
                                                *
    v.                                        *
                                                *
Tyson Foods, Inc.; Don Tyson;                   *
John H. Tyson; Cheryl Tyson;                    *
Jack L. Williams; Archibald R.                  *
Schaffer, III,                                  *
                                                *
    Defendants - Appellees.                   *

———————

Submitted: January 10, 2000
Filed:   March 13, 2000

———————

Before BOWMAN and LOKEN, Circuit Judges, and ALSOP,[1] District Judge.

———————

BOWMAN, Circuit Judge.

A group of cattle producers sued Tyson Foods, Inc. and several affiliated individuals (collectively Tyson) alleging that Tyson was able to exempt the poultry industry from strict regulations by providing illegal payments to United States Department of Agriculture (USDA) officials. The cattle producers allege that, by freeing poultry producers from the costs of complying with the strict regulations, Tyson lowered the cost of producing poultry, which eventuated in a reduced demand for beef, and thereby cost the cattle producers business and profits. The District Court[2] dismissed the suit and we affirm.

I.

The plaintiff cattle producers raise cattle and sell them to beef processors, also called packers, who in turn process the cattle and thereby ultimately supply beef for consumers. Defendant Tyson is a poultry processor. It buys poultry from growers and processes the poultry. The processed poultry ultimately is sold to consumers.

---

[1]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

In March 1993, responding to an outbreak of fatal illness from beef-born bacteria, the USDA promulgated "zero tolerance" regulations with regard to contamination of beef. Regulations on contamination had been in place previously, but were less strict. In July 1994, the USDA announced zero tolerance regulations for poultry processors.

The cattle producers claim that a series of illegal payments were made to USDA officials, including then-Secretary of Agriculture Michael Espy, and related persons, such as Espy's girlfriend. The substance of those allegations, which have been the subject of other judicial proceedings, is not at issue in this appeal.

As a result of those alleged payments, the cattle producers argue, Tyson was able to win favor with the USDA and thereby both delay and water down the zero tolerance regulations that apply to poultry. The cattle producers do not allege that the zero tolerance beef regulations were a result of Tyson's improper activity, but rather allege that the regulatory burden on Tyson (and other poultry processors) was reduced by Tyson's alleged favors to Espy relative to what the burden would have been otherwise.

The alleged injuries to the cattle producers are lost cattle sales and lower prices for their cattle. They claim that the poultry industry's lower costs, resulting from lighter regulations, enabled Tyson and other producers to sell poultry more cheaply, which increased the demand for poultry, which in turn lowered the demand for beef, which in turn reduced the beef packers' sales of beef, which in turn reduced cattle producers' sales to packers and lowered the price of the cattle sold. The cattle producers assert that Tyson's alleged illegal payments to Espy and others constitute a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (1994 & Supp. IV 1998), as well as an actionable claim under District of Columbia tort law.

The District Court determined that, even if the facts alleged by the cattle producers are true, the alleged acts of Tyson could not be the proximate cause of the injury suffered by the plaintiffs. Therefore the District Court dismissed the cattle producers' RICO claims for lack of standing and dismissed the tort claim because proximate cause is an essential element of the tort. The District Court also found that the plaintiffs lacked Article III standing. We review de novo, viewing the allegations in the complaint in the light most favorable to the plaintiffs, and will affirm only if it is clear that no relief could be granted even though the plaintiffs could prove facts consistent with the allegations. See Doe v. Hartz, 134 F.3d 1339, 1341 (8th Cir. 1998). Dismissal is proper if the plaintiffs lack standing or the complaint evidences another insuperable bar to relief. See Bowman v. Western Auto Supply Co., 985 F.2d 383, 384 (8th Cir.), cert. denied, 508 U.S. 957 (1993).

## II.

Plaintiffs have standing in a civil RICO case only if the RICO violations both factually and proximately caused injury to the plaintiffs' business or property. See Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 265-68 (1992). Proximate cause is a flexible common-law concept imported from tort law into RICO jurisprudence by way of the antitrust laws. See id. at 267-68. Since but-for causation, or causation in fact, has no logical ending point, the concept of proximate cause cuts off liability for those damages only distantly caused by a defendant's bad acts. Using proximate cause as a standing requirement in civil RICO cases is justified on three grounds. First, the proximate cause requirement reduces the need for apportioning between damages caused by the defendant's actions and damages caused by independent factors. Second, it prevents two or more parties along the chain of causation from obtaining duplicative recovery. Third, the need for deterrence can be met with recoveries by more directly injured parties. See id. at 269-70.

The individuals who are most properly considered the "targets" of Tyson's alleged bad acts are poultry consumers. The administrative law concept of "zone of interests," which can be helpful in analyzing RICO standing, see Israel Travel Advis. Serv. v. Israel Identity Tours, 61 F.3d 1250, 1258 (7th Cir. 1995), cert. denied, 517 U.S. 1220 (1996), might suggest that those consumers are the only parties with standing to bring an action based on these facts, since the alleged public corruption occurred within a statutory framework designed to protect consumers from harms attendant to the consumption of contaminated food. For the sake of argument, however, we will look past that. Consumers might have paid less for poultry than they would have paid under a zero tolerance regime. The lower price of poultry may have persuaded consumers to eat more poultry and less beef (and perhaps less pork, seafood, and even tofu). This would likely lower the beef processors' demand for cattle. This would reduce cattle sales to packers and cattle prices paid to producers.

The mere recitation of the chain of causation alleged by the plaintiffs is perhaps the best explanation of why they do not have standing in this case. The alleged injuries of the cattle producers are far distant along the chain of causation from Tyson's alleged wrongs and are too attenuated and removed from those wrongs to provide a basis for standing under RICO. See, e.g., Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 954 (8th Cir. 1999) ("We hold that any damage to appellants' business reputations was indirect and too remote a consequence of RPR's alleged racketeering activity directed against third-parties and, thus, appellants lack standing to assert RICO claims.").

In the field of private antitrust actions, standing to seek damages is limited to those parties directly injured by the defendant's unlawful conduct. A passed-through injury, such as the injury alleged by the beef producers in this case, is too attenuated to confer standing, even where, unlike the situation here, the plaintiff's injury is one directly passed-through to the plaintiff by a target of the antitrust violation. See Illinois Brick Co. v. Illinois, 431 U.S. 720, 741-47 (1977). Without deciding whether in some

or perhaps all RICO cases the <u>Illinois Brick</u> direct-purchaser rule should be applied to determine standing, we simply observe that all the reasons that antitrust standing is limited to those directly injured apply with especially great force here, where there are many intermediaries and many potential causes of the reduced demand for beef in the chain of causation between the remotely positioned cattle producers and Tyson's alleged acts.

The plaintiff producers' RICO claims were properly dismissed for lack of RICO standing.

III.

The District Court also dismissed the producers' claim, under District of Columbia common law, that Tyson's conduct amounts to intentional interference with prospective economic advantage. As the producers concede, proximate cause is an element of the tort. <u>See</u> <u>Democratic State Comm. v. Bebchick</u>, 706 A.2d 569, 573 (D.C. 1998). We have already determined that the producers' allegations are insufficient to show that Tyson's alleged acts proximately caused the producers' injuries, at least for the purposes of RICO. While there might be nuanced differences between the proximate cause requirements of various causes of action, here the question is not close. We conclude that the producers' common-law tort claim fails as a matter of law for the same reasons that the producers lack standing to pursue their RICO claim. <u>See</u> <u>Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc.</u>, 191 F.3d 229, 242-43 (2d Cir. 1999) (dismissing common law tort claims for lack of proximate cause after dismissing RICO claims for lack of standing), <u>cert. denied</u>, 120 S. Ct. 799 (2000).

Because the cattle producers lack standing to sue Tyson under RICO and because the producers' tort claim fails as a matter of law, we need not and do not address the question of the producers' Article III standing.

-6-

The decision of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.