# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2283

_____

| | | |
|---|---|---|
| Regions Bank, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| J.R. Oil Company, LLC; Security | * | |
| Western Leasing Company; Jones | * | |
| Travel Mart, also known as Jones | * | |
| Travel Mart, Inc.; Jones Mart, also | * | |
| known as Jones Mart, Inc.; Northend | * | |
| Jones Mart; Piggot Jones Mart, also | * | |
| known as Piggot Jones Mart; Tank | * | |
| Management, Inc.; JFM, Incorporated; | * | |
| S.W. Jones Family Limited Partnership; | * | |
| Walcott Enterprises, Inc.; Northchase | * | |
| Development, Inc.; Larry Jack Taylor, | * | |
| jointly and severally; Steven W. Jones, | * | |
| jointly and severally; Marcella Jones, | * | |
| doing business as Piggot Jones Mart, | * | |
| also known as Piggot Jones Mart, doing | * | |
| business as Northend Jonesmart, also | * | |
| known as Northend Jones Mart, jointly | * | |
| and severally; Kelly B. Jones, jointly | * | |
| and severally; Jennifer Jones, jointly and | * | |
| severally; Tim Jones, jointly and | * | |
| severally, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: March 11, 2004

Filed: October 14, 2004

_____

Before RILEY and MELLOY, Circuit Judges, and ERICKSON,[1] District Judge.

_____

MELLOY, Circuit Judge.

Regions Bank appeals the district court's[2] adverse grant of summary judgment on its RICO claims against the various defendants. The RICO claims relate to alleged fraud in the procurement of a loan and the subsequent transfer and use of the collateral for the loan before and during a bankruptcy, culminating in a bankruptcy sale. Because Regions Bank neither raised the issue of fraud during the bankruptcy nor timely moved to set aside the bankruptcy sale, we find the current RICO claims to be an impermissible collateral attack on the final judgment of the bankruptcy court.

In the alternative, we find that Regions Bank suffered no RICO injury and therefore lacks standing to bring a RICO claim. Because Regions Bank's security interest in the collateral was inferior to the perfected security interest of another lender, whose security interest completely encumbered the collateral, Regions Bank's security interest was of no value from its inception. Further, Regions Bank has not alleged that other assets existed to satisfy unsecured creditors. Accordingly, any injury to Regions Bank was complete when Regions Bank funded the loan. The RICO injuries Regions Bank alleges in this case relate to the subsequent bankruptcy

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

[2]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

sale, use of the collateral, and diversion of income generated with the collateral. To the extent there was an injury, it was injury to the third party, priority lienholder whose priority lien fully encumbered the collateral and entitled it to the collateral and/or the proceeds from the collateral. For this additional reason, we affirm the district court's dismissal of the RICO claims. In addition, we affirm the district court's dismissal of the supplemental state law claims for lack of federal jurisdiction.

## I. Background

Through Jones Realty, Inc. ("Jones Realty") and J.R. Oil Company, L.L.C. ("J.R. Oil") Steven Jones owned and operated various gas stations and convenience stores. In April 2000, Steven Jones applied for a $400,000 loan from Regions Bank, ostensibly to buy inventory for J.R. Oil to use in the operation of a truck stop in Cameron, Missouri. Steven Jones submitted personal financial information as well as financial information regarding J.R. Oil and Jones Realty. He represented to Regions Bank that J.R. Oil held assets in excess of $2 million, Jones Realty was worth over $7.6 million, and he and his wife, Marcella Jones, had a net worth in excess of $6.4 million. In addition, he represented that Regions Bank would receive a first lien on J.R. Oil's accounts receivable, equipment, and inventory. Regions Bank granted and funded the loan to J.R. Oil and Steven Jones. Jones Realty provided a guarantee on the loan. Steven Jones executed a security agreement on behalf of J.R. Oil that granted Regions Bank a lien on J.R. Oil's accounts receivable, equipment, and inventory.

According to the Regions Bank officer who signed the J.R. Oil security agreement on behalf of Regions Bank, and according to a Regions Bank officer in charge of "trouble loans," Regions Bank did not complete its lien search until after it funded the loan. The lien search revealed that Regions Bank held a secondary lien position in the collateral.

-3-

In early summer 2000, Steven Jones and his wife, Marcella Jones, with the financial assistance of Steven Jones's friend, Larry Taylor, organized a new company, Jones Travel Mart, Inc. ("JTM"). JTM assumed management of the truck stop in Cameron, Missouri. Regions Bank contends that Jones Realty owned the real estate associated with the truck stop and J.R. Oil owned the equipment, inventory, accounts receivable, and other assets associated with operation of the truck strop. In addition, Marcella Jones nominally assumed control of two other convenience stores owned by Jones Realty and operated by J.R. Oil in Piggot and Paragould, Arkansas. After assuming nominal control of these two other convenience store properties, she started operating them as Piggot Jonesmart and Northend Jonesmart. There is no documentation to memorialize any transfer of assets from J.R. Oil to Jones Realty, Larry Taylor, JTM, Marcella Jones, Piggot Jonesmart, or Northend Jonesmart. J.R. Oil claims that this omission in its records is due to the fact that J.R. Oil lost many records when J.R. Oil failed to pay rent on storage buildings that housed the records. Regions Bank claims that these persons and entities wrongly appropriated the assets of J.R. Oil. Without explanation, after Regions Bank funded the $400,000 loan to J.R. Oil, Elwood Bonner, the accountant for J.R. Oil, wrote off over $2 million of J.R. Oil's furniture, equipment, inventory and accounts receivable.

On the same day that Steven Jones organized JTM, J.R. Oil filed for bankruptcy under Chapter 11. J.R. Oil included Regions Bank in its list of creditors. Two days later, on July 27, 2000, Jones Realty filed for bankruptcy under Chapter 11. Jones Realty did not list Regions Bank as a creditor. The first meeting of creditors for both bankruptcies took place on September 8, 2000, at 2:00 p.m. in the Federal Building in Jonesboro, Arkansas, in the same room. Counsel for Regions Bank, Marie B. Miller, attended the meeting on behalf of Regions Bank and signed in as the representative for Regions Bank on a sign-in sheet for the J.R. Oil bankruptcy. Regions Bank did not intervene in the Jones Realty bankruptcy nor request notice of proceedings in the Jones Realty bankruptcy. It is undisputed that Regions Bank knew that the guarantor on the loan, Jones Realty, filed bankruptcy.

-4-

According to J.R. Oil's bankruptcy filings, loan documents, security agreements, and UCC filings, J.R. Oil borrowed $900,000 from Enterprise Mortgage Acceptance Corporation ("Enterprise") in 1997. In 1998, J.R. Oil borrowed an additional $3,202,000.00 from Enterprise. In 1997 and 1998, Enterprise perfected continuing security interests over J.R. Oil's assets, including accounts receivable, inventory, and equipment at the Cameron, Missouri, and Piggott and Paragould, Arkansas sites, among others. In 1999, Enterprise assigned its security interests to LaSalleNational Bank ("LaSalle"). J.R. Oil, apparently, borrowed additional money from Enterprise. When J.R. Oil filed for bankruptcy, J.R. Oil listed its debt to Enterprise as $9,289,235.00. In its bankruptcy filings, J.R. Oil listed inventory as collateral for the debt owed to Regions Bank, listed the value of the inventory as only $2000, and listed the entire $400,000 of debt to Regions Bank as unsecured. Regions Bank neither contested the information J.R. Oil provided to the bankruptcy court, challenged the amount of indebtedness that J.R. Oil listed regarding Enterprise, nor raised the issue of Bonner's unexplained write-off of $2 million worth of furniture, inventory, equipment, and accounts receivable. It is undisputed that Regions Bank knew at the time of the J.R. Oil bankruptcy that Steven Jones had made misrepresentations to induce Regions Bank to grant him the $400,000 loan.

Between August 1, 2000, and December 2001, JTM paid out approximately $200,000 to Steven and Marcella Jones. Regions Bank alleges in its current RICO claims that these payments were improper diversions of cash generated by assets that JTM misappropriated from J.R. Oil during the time of the J.R. Oil bankruptcy. Regions Bank further alleges that J.R. Oil should have been operating the Cameron truck stop as the debtor-in-possession under Chapter 11. No defendant offered an explanation for these payments from JTM to the Joneses.

J.R. Oil moved to dismiss its Chapter 11 bankruptcy on December 19, 2000. In this motion, J.R. Oil represented that it:

. . . no longer ha[d] an operating business. Moreover, the remaining property of the Debtor, to the extent any such property exists, is encumbered by liens which secure debt in excess of the value of such property. The remaining property of the Debtor is burdensome or of inconsequential value so that there is nothing to administer for the benefit of unsecured creditors.

Regions Bank does not allege that it failed to receive notice of the motion to dismiss. Further, Regions Bank does not allege that it acted to prevent the dismissal, failed to receive any documents associated with the J.R. Oil bankruptcy, or raised any claim before the bankruptcy court regarding the purported misappropriation of J.R. Oil's assets by Jones Realty, JTM, Steven Jones, Marcella Jones, Larry Taylor, or any other individual or entity. The bankruptcy court records show the J.R. Oil bankruptcy closed as of February 27, 2001, with no outstanding objections.

On June 6, 2001, Regions Bank received a state court judgment in the state of Arkansas against Steven Jones in the amount of $400,000 for the outstanding principal on the 2000 note as well as $10,000 in attorneys fees.

On July 2, 2001, Jones Realty filed a motion in the Jones Realty bankruptcy to seek approval for the sale of real property and improvements at four sites in Missouri and Arkansas to a company named Sierra Pacific Land Company ("Sierra") or its assigns. The sites included real property in Cameron, Missouri (property other than the Cameron truck stop). LaSalle, the priority lienholder, objected. On September 6, 2001, after Jones Realty and Sierra worked out a settlement with LaSalle, the bankruptcy court approved the sale of real property for $150,000, free and clear of all liens. The bankruptcy court specifically found that Sierra or its assigns were purchasers in good faith, the terms of the sale were fair and equitable, Jones Realty exercised its best business judgment in connection with the sale, and the sale was in the best interest of Jones Realty and its creditors.

Sierra assigned its rights under the September sale order to Northchase Development, Inc. ("Northchase"), a company formed and owned by Steven Jones' friend, Larry Taylor. On October 10, 2001, Northchase purchased the four parcels of real property from Jones Realty in accordance with the September 6 order.

On December 6, 2001, Jones Realty filed a motion with the bankruptcy court to seek approval for the sale of all "right, title, and interest in and to certain real *and personal property*, free and clear of all liens, claims, and encumbrances of any kind whatsoever[.]" (Emphasis added). The "certain real property" included the Cameron truck stop and the Piggott and Paragould, Arkansas properties. The proposed buyer was Larry Taylor's company, Northchase. On January 17, 2001, the bankruptcy court approved the sale, free and clear of all liens, for $1 million. The bankrupcty court specifically found that Northchase was a purchaser in good faith, the sale was the result of a fully negotiated, arms-length transaction, the terms of the sale were fair and equitable, Jones Realty exercised its best business judgment in connection with the sale, and the sale was in the best interest of the estate and Jones Realty's creditors.

On January 31, 2002, Northchase purchased the property from Jones Realty in accordance with the January 17 order. Larry Taylor and Marcella Jones transferred their shares of JTM to Northchase, which in turn transferred the shares of JTM to a company named Walcott Enterprises, Inc. ("Walcott"), run by Steven Jones's son, Kelly Jones. Regions Bank alleges that Kelly Jones was young, inexperienced in the operation of gas station/convenience stores, and not creditworthy. Nevertheless, before February 1, 2002, Northchase agreed to loan Walcott $700,000 under a promissory note that Kelly Jones executed on behalf of Walcott. Northchase and Larry Taylor, in turn, borrowed money from American Bank so that Northchase could fund the note to Walcott. On February 1, 2002, Northchase leased the newly purchased property to Walcott. Through a series of payments, Northchase, in fact, funded the note to Walcott. In return, Northchase structured the lease payments due from Walcott to mirror Northchase's debt payments to American Bank.

Taylor received a payment of $125,000 from JTM that Regions Bank characterizes as a "consulting fee" for Taylor's role in the above-described, bankruptcy-assisted reorganization. Regions Bank alleges that Kelly Jones is a figurehead and Walcott is merely a shell to permit Steven Jones, his family, and Larry Taylor to thwart creditors and hold and enjoy the benefit of the properties sold through the Jones Realty bankruptcy.

On April 23, 2002, Regions Bank filed its complaint in the present case. Regions Bank did not allege that any of the bankruptcy sales were for less than fair value. Regions Bank alleged state law fraud, civil conspiracy, and breach of contract claims. In addition, Regions Bank alleged three civil RICO claims. In its three RICO claims, Regions Bank alleged that the "enterprise" was an association consisting of Steven, Marcella and Kelly Jones, Larry Taylor, Walcott, and Northchase. In Count I, Regions Bank alleged that these defendants "acquired and maintained interests in and control of JTM through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(b). In Count II, Regions Bank alleged that these defendants "agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c). In Count III, Regions Bank alleged that these defendants conspired to commit the actions alleged in Counts I and II in violation of 18 U.S.C. § 1962(d). As predicate acts, Regions Bank alleged fraud in the procurement of the loan, bankruptcy fraud, and multiple acts of wire and mail fraud that extended until early 2002 when Walcott obtained control of J.R. Oil's former assets through the Jones Realty bankruptcy sale. Regions Bank alleged in the alternative close-ended and open-ended conspiracies. Under the open-ended conspiracy theory, Regions Bank alleged as ongoing predicate acts the use of the mails and wires to make ongoing lease payments from Walcott to Northchase.

Larry Taylor and Northchase moved to dismiss Regions Bank's original complaint for failure to plead the alleged instances of fraud with sufficient

particularity, as required under Federal Rule of Civil Procedure 9(b). Regions Bank amended its complaint to add detail. Larry Taylor and Northchase, however, renewed their motion. In addition, after some discovery, Larry Taylor and Northchase moved for summary judgment. All other defendants joined in the summary judgment motion. The defendants argued that the RICO claims failed as a matter of law and the district court should not retain jurisdiction over the remaining state law claims. The defendants specifically argued that Regions Bank failed to generate a genuine question of material fact as to the "continuity" requirement of the RICO claims or the requirement of a RICO injury to confer standing. Further, the defendants argued on grounds of res judicata that Regions Bank's RICO claims were nothing more than a thinly veiled collateral attack on the judgment of the Jones Realty bankruptcy court regarding the sales of assets to Northchase for fair value.

The district court treated the motions to dismiss as motions for summary judgment, allowed Regions Bank adequate opportunity to respond, and ruled on the outstanding motions in one order. The district court determined that Regions Bank failed to allege sufficient predicate acts over a sufficient period of time to establish the continuity prong of a RICO claim under either a close-ended or open-ended scheme. The district court did not address other arguments that the defendants raised in their motions.

Because other creditors had forced Steven Jones into involuntary bankruptcy by the time of the district court's ruling, Steven Jones enjoyed the protection of the automatic stay associated with his personal, involuntary bankruptcy. The district court ruled that the automatic stay did not require a stay of the claims against the other defendants. Accordingly, the district court's final order in this case disposed of the RICO claims against all defendants other than Steven Jones.

## II. Discussion

We review the district court's grant of summary judgment de novo and view the facts in a light most favorable to the non-moving party. Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 979 (8th Cir. 1991). Regions Bank argues that our review is strictly limited to the legal issue that the district court chose to address, namely, the continuity requirement under RICO. It is clear, however, that the defendants properly raised numerous other grounds for relief before the district court. It is well settled that we are not constrained by a district court's choice of legal theories among those that parties set forth for disposition of a case. Rather, we may decide a case on any grounds supported by the record and not waived by a moving party. See Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990) ("We may affirm a judgment on any ground supported by the record even if not relied upon by the district court."); Blum v. Bacon, 457 U.S. 132, 137 n.5 (1982) ("[W]ithout filing a cross-appeal or cross-petition, an appellee may rely upon any matter appearing in the record in support of the judgment below."). Here, those issues include Regions Bank's standing under RICO and the defendants' characterization of Regions Bank's RICO claim as an impermissible collateral attack on the bankruptcy court's final judgment.

## II.A. RICO Standing

To have standing to bring a civil RICO claim, a plaintiff must have suffered injury "by reason of" a RICO violation. 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee . . . ."). The phrase "by reason of" as used in § 1964(c) means causation under the traditional tort "requirements of proximate or legal causation, as opposed to mere factual or 'but for' causation." Bieter Co. v. Blomquist, 987 F.2d

1319, 1325 (8th Cir. 1993); see also Newton v. Tyson Foods, Inc., 207 F.3d 444, 446-47 (8th Cir. 2000) ("Plaintiffs have standing in a civil RICO case only if the RICO violations both factually and proximately caused injury to the plaintiffs' business or property."). Further, "a showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." Steele v. Hosp. Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994) (internal citations and quotation marks omitted); see also Price v. Pinnacle Brands, Inc., 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing.") (quoting Anderson v. Kutak (In re Taxable Mun. Bond Sec. Litig.), 51 F.3d 518, 523 (5th Cir. 1995)).

Taking the facts in a light most favorable to Regions Bank, we must assume that Steven Jones, perhaps with the assistance of his accountant, Edward Bonner, committed fraud in the procurement of the $400,000 loan from Regions Bank. Regions Bank's own failure to adequately research the status of prior liens against J.R. Oil's assets, coupled with this presumed fraud, clearly caused injury to Regions Bank, both factually and proximately. Further, the $400,000 that Regions Bank actually gave to J.R. Oil under the loan cannot be viewed as an "intangible property interest."

This tangible injury to Regions Bank was complete, however, when Regions Bank funded the loan. Nothing that occurred subsequent to the funding of the loan proximately caused any harm to Regions Bank. It is undisputed that other parties' security interests fully encumbered the collateral that J.R. Oil and Steven Jones pledged to Regions Bank. It is also undisputed that J.R. Oil did not hold assets sufficient to satisfy the debt owed to the priority lienholders, EMAC and LaSalle, much less assets sufficient to satisfy any claims of unsecured creditors, or undersecured creditors second in line to EMAC and LaSalle. Accordingly, nothing that Steven Jones, Marcella Jones, Larry Taylor, Walcott, or Northchase did in the

course of the alleged RICO scheme of bankruptcy irregularities and corporate shell games worsened Regions Bank's position.

Importantly, Regions Bank set forth no evidence, by affidavit or otherwise, to support an inference that the isolated allegation of fraud in the loan application process was related to the alleged RICO enterprise. Regions Bank alleged a RICO enterprise of purported bankruptcy abuses and corporate maneuvering undertaken by Steven, Marcella and Kelly Jones, Larry Taylor, Walcott, and Northchase. However, Regions Bank granted and funded the loan based on representations that Steven Jones made on behalf of himself, J.R. Oil, and Jones Realty, and based on financial reports that accountant Edward Bonner prepared regarding Steven and Marcella Jones, J.R. Oil, and Jones Realty. No evidence suggests that the other alleged members of the RICO enterprise had anything to do with the loan from Regions Bank, or that any activities related to the pre-bankruptcy planning or bankruptcy-related transactions contributed to Steven Jones's and J.R. Oil's indebtedness to Regions Bank (or their indebtedness to any of the other lenders affected by the J.R. Oil bankruptcy).

The facts that might support a connection between the Regions Bank loan and the subsequent bankruptcy-related activities provide only a basis for speculation. These facts are: (1) the close proximity in time between the loan application and the bankruptcy filing; (2) Larry Taylor's admission that he spoke with Steven Jones regarding Steven Jones's financial problems in the spring of 2000; and (3) the fact that Marcella Jones is married to Steven Jones and that Kelly Jones is his son. These facts, however, are insufficient for a reasonable jury to conclude that a RICO enterprise existed at the time of the loan application, or that the alleged RICO enterprise had anything to do with the loan from Regions Bank. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (stating it is the judge's function "to determine whether there is a genuine issue for trial[,]" and that "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted" (internal citations omitted)).

Turning, then, to allegations concerning the RICO enterprise, Regions Bank claims, in essence, three possible sources of harm[3]: (1) J.R. Oil's possibly wrongful transfer of assets to JTM in the summer of 2000 when J.R. Oil declared bankruptcy; (2) JTM's possibly wrongful payment of proceeds from those assets to Steven and Marcella Jones or Larry Taylor when operating the Cameron truck stop after J.R. Oil filed bankruptcy; or (3) J.R. Oil's or JTM's possibly wrongful transfer of assets to Jones Realty before Jones Realty sold those assets under the authority of the bankruptcy court in January of 2002. Any potential RICO violations surrounding the bankruptcy and corporate reshuffling caused harm, if any, to the only parties who held valuable rights to recovery in the J.R. Oil bankruptcy, namely the priority lienholders. Regions Bank, as a secondary lienholder in a bankruptcy where the priority lienholders held complete claims over the only assets, has no RICO standing to contest the alleged irregularities. Simply put, analysis of proximate causation requires identification of actual, not hypothetical harm, and any impact of the bankruptcy proceedings on Regions Bank interest was purely hypothetical since the security interest and the right to repayment from J.R. Oil were without value from their inception. Newton, 207 F.3d at 447 (denying RICO standing for lack of proximate causation where injury was too attenuated); Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 952 (8th Cir. 1999) (denying RICO standing to the employee-plaintiffs of a pharmaceutical company where they were not the intended targets of the alleged racketeering activity directed towards hospitals and physicians);

---

[3]Regions Bank actually argued broader theories of harm that require little discussion. Regions Bank argued at oral argument that there is something inherently wrong when a bankrupt debtor solicits the aid of family, friends, or business associates to purchase assets out of bankruptcy for fair value and subsequently return those assets to the bankrupt debtor or hold those assets for the benefit of the bankrupt debtor and/or his family. Such a position is clearly without merit. Where assets are sold for fair value with the approval of the court, it doesn't matter if the purchaser is an insider or a stranger. The subsequent use of those assets is wholly the prerogative of the bankruptcy sale purchaser, who obtains clean title. Similarly there is nothing inherently wrong with pre-bankruptcy planning that may lead to such sales.

In re Taxable Muni. Bond Sec. Litig., 51 F.3d at 522 (stating in the context of RICO standing that "[a plaintiff's] contention that he has sustained a lost 'opportunity' to obtain a [state-subsidized] loan by itself is too speculative to constitute an injury").

Finally, even if the alleged bankruptcy irregularities and misappropriation of assets had harmed Regions Bank's position as a bankruptcy creditor, that harm would have been harm to Regions Bank's secondary security interest or contractual right to repayment under the $400,000 note. Injury to these "intangible property interests" is not injury that may support standing to bring RICO claims. See Price, 138 F.3d at 607 ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."); Steele, 36 F.3d at 71 (holding that patients lacked standing to bring RICO claims for allegedly fraudulent health care billings where insurance companies rather than patients suffered the actual financial harm from the alleged RICO violations); Berg v. First State Ins. Co., 915 F.2d 460, 464 (9th Cir. 1990) (denying RICO standing where there was no showing of actual financial loss caused by alleged RICO violations, but rather, plaintiffs alleged merely an "injury" related to the loss of certain insurance policies based on "both the protection [the policies] afforded against potential financial loss in the future and the present peace of mind that flows from such protection") (alteration in original).

In summary Regions Bank lacks RICO standing because it suffered no injury to a tangible interest by reason of RICO violation. Although Regions Bank suffered an injury to a tangible property interest, that injury was not "by reason of" a RICO violation, rather, it was by reason of alleged bank fraud not shown to be related to the alleged enterprise. Further, no alleged RICO violation proximately caused an injury to Regions Bank because the intangible property interest that Regions Bank possessed at the time of the alleged RICO violations was without value from its inception. Finally, even if the alleged RICO violations had caused an injury to Regions Bank, the only interest Regions Bank possessed at the time of the alleged

-14-

RICO violations was an intangible property interest, injury to which cannot support a RICO claim.

## II.B.  Impermissible Collateral Attack

In the alternative, even if Regions Bank had standing to raise RICO claims, we would find the present claims barred as a collateral attack on the final judgments of the bankruptcy court.  Claims related to the Jones Realty bankruptcy sale are barred as impermissible collateral attacks because the bankruptcy sale conferred rights good as against the world, not merely rights good as against parties to the sale.  Claims related to the alleged misappropriation of assets from J.R. Oil are barred under normal principals of res judicata.

Res judicata normally only applies against parties who participated in the prior proceedings and "had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect."  Costner v. URS Consultants, Inc., 153 F.3d 667, 673 (8th Cir. 1998) (explaining that a final judgment bars any subsequent suit where "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action").  Here, Regions Bank was not a party to the Jones Realty bankruptcy which produced the final orders approving the sales of collateral to Northchase.  Accordingly, normal principles of res judicata do not bar Regions Bank's claim as against a final judgment in the Jones Realty bankruptcy.  This is true even though Regions Bank clearly had notice of the Jones Realty bankruptcy, and failed to intervene, because a "party is not . . . required to intervene voluntarily in a separate pending suit merely because it is permissible to do so."  Black Clawson Co. v. Kroenert Corp., 245 F.3d 759, 764 (8th Cir. 2001); see also, Chase Nat'l Bank v. City of Norwalk, 291 U.S. 431, 441 (1934) ("Unless duly summoned to appear in a

legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights.").

Normal principals of res judicata, however, are not necessary for the judgment in the Jones Realty bankruptcy to bar Regions Bank's claims to the extent those claims relate to the sale of the collateral. The bankruptcy court in the Jones Realty bankruptcy approved the sale and found the sale to be in good faith, for fair value, and in the best interest of Jones Realty and its creditors. A bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings. As the Seventh Circuit has held:

> [I]nsofar as [a] fraud suit is . . . on behalf of nonparties to the sale proceeding . . . it is not barred by res judicata. But it is barred. A proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding.

Gekas v. Pipin (In the Matter of Met-L-Wood Corp.), 861 F.2d 1012, 1017 (7th Cir. 1988). The judgment, therefore, is shielded from collateral attack not by res judicata, but by virtue of the nature of rights transferred under 11 U.S.C. § 363.

Finally, Regions Bank was a party to the J.R. Oil bankruptcy proceeding. Accordingly, Regions Bank is barred from raising claims or causes of action that were, or should have been, raised in that proceeding. We have interpreted the phrase "the same claims or causes of action" to mean claims that arise out of the same nucleus of operative facts. See Costner, 153 F.3d at 673 ("Regarding the 'same claims or causes of action' element of claim preclusion, we have stated that whether a second lawsuit is precluded turns on whether its claims arise out of the 'same nucleus of operative facts as the prior claim.'") (quoting United States v. Gurley, 43

F.3d 1188, 1195 (8th Cir.1994)) (in turn quoting <u>Lane v. Peterson</u>, 899 F.2d 737, 742 (8th Cir.1990)).  Here, at the time Regions Bank funded the loan to J.R. Oil and Steven Jones, it believed J.R. Oil held millions of dollars worth of inventory, equipment, and accounts receivable.  When J.R. Oil filed for bankruptcy and claimed to the bankruptcy court that it did not hold such assets, Regions Bank knew that Steven Jones had misrepresented J.R. Oil's position or that J.R. Oil had somehow disposed of its assets.  Regions Bank, however, took no action to challenge the allegations in J.R. Oil's bankruptcy filings or put the bankruptcy court on notice of potentially missing assets or potential fraud.  Subsequently, when J.R. Oil sought and received voluntary dismissal of the bankruptcy based on the purported absence of assets and the absence of a reorganization plan, J.R. Oil again failed to object.  On these facts, Regions Bank is barred from raising in subsequent RICO claims allegations of injury caused by fraud or the misappropriation of assets that Regions Bank failed to raise before the bankruptcy court.

In light of our decision to affirm the district court's grant of summary judgment on the RICO claims, we must review the district court's decision to decline the continued exercise of supplemental jurisdiction over Regions Bank's state law claims under 28 U.S.C. § 1367(c)(3).  Our review is for abuse of discretion.  <u>See Eddings v. City of Hot Springs</u>, 323 F.3d 596, 600 (8th Cir. 2003).  Finding no abuse of discretion, and no arguments on this issue that merit further discussion, we affirm.

The judgment of the district court is affirmed.

_____