# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1786

_____

In re: Veg Liquidation, Inc., formerly known as Allens, Inc.; All Veg, LLC,

*Debtors*.

------------------------------

R. Ray Fulmer, II,

*Appellant*,

v.

Fifth Third Equipment Finance Company; Ryder Integrated Logistics, Inc.; International Paper Company; URS Real Estate, LP; Ball Metal Food Container, LLC; Syngenta Seeds, Inc.; Teneo Securities, LLC; Andrew Torgove; Lazard Middle Market LLC; Lazard Freres & Co. LLC; Alvarez & Marsal, North America, LLC; Alvarez & Marsal Private Equity Performance Improvement, LLC; Jonathan Hickman; Sager Creek Vegetable Company, formerly known as Sager Creek Acquisition Corp., now known as 412, Inc.; 1903 Onshore Funding, LLC; Cortland Capital Market Services, LLC; Sankaty Credit Opportunities, IV, L.P.; Sankaty Credit Opportunities, IV, L.P. (Caymanian), correctly named as, Sankaty Credit Opportunities, (Offshore Master) IV; Sankaty Middle Market Opportunities Fund, L.P.; Sankaty Middle Market Opportunities Fund, L.P. (Caymanian), correctly named as, Sankaty Middle Market Opportunities Fund, (Offshore Master), L.P.; Does 1-100; Alvarez & Marsal Holdings, LLC; 412, Inc., formerly known as Sager Creek Vegetable Company, formerly known as Sager Creek Acquisition Corp.; Sankaty Credit Opportunities, (Offshore Master) IV; Sankaty Middle Market Opportunities Fund, (Offshore Master), L.P.,

*Appellees*.

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: January 17, 2019
Filed: July 26, 2019

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

R. Ray Fulmer, II, a Chapter 7 bankruptcy trustee, sued a number of parties involved in the sale of a bankruptcy estate's assets under 11 U.S.C. § 363. The bankruptcy court[1] dismissed Fulmer's claims on the ground that they were either impermissible collateral attacks on an earlier order approving the sale or without merit. The court also denied Fulmer leave to file a second amended complaint. The Bankruptcy Appellate Panel affirmed. Fulmer appeals to this court, and we affirm.

I.

The dispute arises from bankruptcy proceedings for Allens, Inc., an Arkansas food canning enterprise. After encountering financial difficulties, Allens filed for Chapter 11 bankruptcy in October 2013. The bankruptcy court authorized bidding procedures for the sale of substantially all of Allens's assets. Allens then moved to sell the assets under 11 U.S.C. § 363(b) and (f), which authorize the sale of a bankruptcy debtor's assets when certain conditions are met.

_____

[1]The Honorable Ben T. Barry, Chief Judge, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

-2-

Allens identified Seneca Foods Corporation as the "Stalking Horse" purchaser—that is, the potential purchaser whose opening bid would set the floor at the auction—and prepared a "stalking horse asset purchase agreement" between Allens and Seneca Foods. The bankruptcy court granted the motion for sale after notice and a hearing. Allens then served a "Notice of Bid Procedures, Sale Hearing and Objection Deadlines" for the auction on more than 5,000 creditors and parties in interest through a noticing agent.

The auction occurred between February 3 and 6, 2014. At the auction, a marketing firm retained by Allens estimated the net value of each bid submitted. The marketing firm ultimately valued Seneca's opening bid at approximately $117 million, whereas the unadjusted price in the stalking horse asset purchase agreement had been $148 million. Sager Creek Acquisition Corp., an entity formed by a group of second lienholders, also submitted a bid, which the marketing firm valued at $160 million. Allens ultimately deemed Sager Creek the successful bidder for the estate's assets, but the final asset purchase agreement reflected a sale price of just under $125 million. After a hearing, the bankruptcy court issued a detailed order approving the sale to Sager Creek. No appeals were taken, and the sale closed on February 28, 2014.

Within a few months, the bankruptcy court converted the proceeding to a Chapter 7 bankruptcy and appointed Fulmer as trustee of the bankruptcy estate. Fulmer brought this action in February 2016, and filed a first amended complaint in April 2016.

In his amended complaint, Fulmer names more than twenty defendants allegedly connected in various ways to the sale of the Allens assets. He groups them into three categories: the "Committee Defendants," who were members of the unsecured creditors committee in the Chapter 11 proceeding; the "Fiduciary Defendants," who were retained by Allens to serve as financial advisors in the

proceeding; and the "Sager Creek Defendants," who held interests in Allens as second lienholders. The amended complaint asserts fourteen causes of action, all arising from the defendants' alleged conduct in connection with the sale proceedings. The defendants moved to dismiss the complaint for failure to state a claim. *See* Fed. R. Bankr. P. 7012(b).

The bankruptcy court dismissed the complaint and denied as futile Fulmer's request for leave to file a second amended complaint. The court determined that Fulmer did not plead a plausible claim of fraud on the court, collusion among bidders under 11 U.S.C. § 363(n), or for post-judgment relief from the sale order under Federal Rule of Civil Procedure 60(b). The court concluded that the trustee's other claims were barred by the finality of the order approving the asset sale under § 363, and that the proposed amended complaint would be futile. The Bankruptcy Appellate Panel (BAP) affirmed.

In an appeal from a decision of the BAP, we are a second reviewing court. We review *de novo* both the bankruptcy court's grant of a motion to dismiss for failure to state a claim, and the court's denial of leave to amend that rests on a legal conclusion of futility. *In re Archdiocese of Saint Paul & Minneapolis*, 888 F.3d 944, 950 (8th Cir. 2018); *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

II.

A.

The first issue on appeal is whether Fulmer's claims constitute an impermissible collateral attack on an asset sale in bankruptcy that was consummated under 11 U.S.C. § 363. To evaluate this contention, it is necessary to review Fulmer's allegations in the first amended complaint.

As Fulmer tells it, the Committee Defendants and the Sager Creek Defendants—all of them creditors of Allens—were at risk of receiving less than full repayment as bankruptcy loomed in 2013. The Sager Creek Defendants' loans were only partially secured, and Seneca's stalking horse bid, if successful, would have relegated $30 million of those defendants' claims to unsecured creditor status. The Committee Defendants, for their part, held at least $72 million in unsecured claims for accounts receivable. The Committee Defendants had also received more than $18 million from Allens in the ninety days preceding the bankruptcy, such that a trustee potentially could avoid those transfers under 11 U.S.C. § 547(b).

Fulmer alleges that before the initial bankruptcy filing, one of the Committee Defendants, Ball Metal Food Container Corp., executed an undisclosed agreement with the Sager Creek Defendants. The agreement, according to Fulmer, provided that Ball would receive a lucrative contract with a new entity formed by the Sager Creek Defendants (*i.e.*, Sager Creek Acquisition Corp.) if that entity was the successful bidder in a § 363 sale for Allens's assets. Ball ultimately had one of the largest claims as a member of the unsecured creditors' committee in the Chapter 11 proceedings.

Fulmer then claims that the Fiduciary Defendants, who were aware of the agreement between Ball and the Sager Creek Defendants, manipulated the valuations of the bids at the auction. The terms of Seneca's bid, Fulmer explains, would have left $32.9 million in real estate and $74 million in ninety-day avoidance claims with the Allens estate. The terms of Sager Creek's final bid, by contrast, gave Sager Creek all of those assets, with a covenant not to pursue the avoidance claims. Yet despite these differences, the Fiduciary Defendant assisting Allens at the auction valued Seneca's bid at $117 million and valued Sager Creek's bid at $160 million. Fulmer contends that as a result of these actions, the defendants collectively divested the Allens estate of at least $74 million in avoidance claims and up to $32.9 million in real estate and personal property.

Based on this episode, Fulmer brought numerous claims against the defendants, including allegations of breach of fiduciary duty, fraudulent transfer, conversion, inducing breach of contract, intentional interference with contractual relations and prospective economic relations, negligent interference with prospective economic relations, deceptive trade practices, and an equitable claim for rescission and reformation. Fulmer argues that the bankruptcy court erred by characterizing these claims as a collateral attack on the February 2014 sale order, and by misapplying principles of *res judicata* and collateral estoppel.

Fulmer's contention brings to the fore this court's decision in *Regions Bank v. J.R. Oil Co.*, 387 F.3d 721 (8th Cir. 2004). *Regions Bank*, following *In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988), held that an order authorizing a sale free and clear of liens under § 363 "is shielded from collateral attack . . . by virtue of the nature of rights transferred under 11 U.S.C. § 363." 387 F.3d at 732. This is so because "[a] proceeding under section 363 is an *in rem* proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." *Id.* (quoting *In re Met-L-Wood*, 861 F.2d at 1017). Plaintiffs are therefore barred from bringing claims that amount to collateral attacks on the validity of a § 363 sale. In *Regions Bank*, we applied that rule where a plaintiff brought RICO claims premised on the defendants' alleged fraud in connection with a § 363 sale in a bankruptcy to which the plaintiff was not a party. *Id.* at 731-32. This court held that the claims were barred "to the extent [they] relate to the sale." *Id.* at 731.

In this case, the bankruptcy court's February 2014 order approved the sale of the Allens assets to Sager Creek free and clear of all liens under 11 U.S.C. § 363(b) and (f). At bottom, Fulmer's complaint is that Sager Creek won the auction for the Allens assets with an overvalued bid that was supported by an undisclosed agreement between an unsecured creditor and the second lienholders who formed Sager Creek. Fulmer's contention amounts to an impermissible collateral attack on the February

-6-

2014 sale order under the reasoning of *Regions Bank*. In the order, the bankruptcy court determined that "all of the Acquired Assets were subject to a competitive and good faith bidding process," and that Sager Creek had "submitted the highest or otherwise best bid for the Acquired Assets offered at the Auction." The court also concluded that the consideration to be provided by Sager Creek was "the highest and otherwise best offer for the Acquired Assets." To sustain Fulmer's claims, a court would have to contradict those determinations. The finality accorded to asset sales under § 363 bars Fulmer's line of attack.

Fulmer's arguments to the contrary are unconvincing. He first contends that his complaint does not collaterally attack the February 2014 sale order, because the defendants were not parties to the order, and he does not seek reversion of title to the property sold. A sale free and clear under § 363, however, is "a judgment that is good as against the world, not merely as against parties to the proceedings." *Id.* at 732. The claims barred in *Regions Bank* likewise did not seek reversion of title; they were claims for damages under RICO. *Id.* at 727-28, 731; *see* 18 U.S.C. § 1964(c). The Seventh Circuit similarly described a suit seeking "heavy damages" from parties involved in a § 363 sale as a "thinly disguised collateral attack on the judgment confirming the sale." *In re Met-L-Wood Corp.*, 861 F.2d at 1018.

Fulmer also argues that the provisions of the sale order that conflict with his claims were not "integral" to the sale, so his complaint does not attack the sale order's validity. He imports this requirement from 11 U.S.C. § 363(m), which provides that reversal or modification of a § 363(b) sale on direct appeal does not "affect the validity of a sale" unless the sale order was stayed pending appeal. 11 U.S.C. § 363(m). This court reasoned in *In re Trism, Inc.*, 328 F.3d 1003 (8th Cir. 2003), that an appeal could "affect the validity of a sale" under § 363(m) only if it challenged a provision of the sale order that was "integral to the sale of the estate's assets." *Id.* at 1007.

-7-

*Regions Bank* did not address whether the bar on collateral attacks is limited to those that challenge "integral" provisions of a § 363 sale. But if there were such a limitation, it would be satisfied here. Undermining the sale order's finding that Sager Creek's consideration was "the highest and otherwise best offer for the Acquired Assets" would "adversely alter the parties' bargained-for exchange." *Id.* When modifying or reversing a provision of the sale order would have that effect, the provision is "integral" to the sale. *Id.*

This is not to say that the rule of finality governing asset sales under § 363 forecloses all suits related to sales of a debtor's assets. For example, a claim that a fiduciary's conduct kept a prospective bidder from securing adequate funding to make a more competitive bid does not necessarily call into question a bankruptcy court's determination that the successful bid was the best offer on the table. *See Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 155, 162-63 (2d Cir. 2017). Nor does the finality rule bar a claim against a fiduciary for conduct related to a sale where the transaction was not subject to approval by the bankruptcy court under § 363. *See In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 899 (8th Cir. 2007); *In re Brook Valley IV*, 347 B.R. 662, 670-71 (B.A.P. 8th Cir. 2006). Where a lawsuit "poses no threat to the finality of the bankruptcy court's orders," *Brown Media Corp.*, 854 F.3d at 163, it does not conflict with the principles enunciated in *Regions Bank* and *In re Met-L-Wood*. But the finality rule precludes allegations like Fulmer's that second-guess the bankruptcy court's determination that the buyer submitted the best bid for the assets.

Fulmer also argues that the sale order is simply unenforceable because the required elements for a sale were not adequately proven. But the finality of a bankruptcy court's orders at the conclusion of direct review "[o]rdinarily . . . stand[s] in the way of challenging their enforceability." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (internal quotation and brackets omitted). We agree with the BAP that Fulmer's freestanding challenge to the sale order, while

-8-

permissible on direct appeal, cannot be raised at this stage. *See In re Met-L-Wood*, 861 F.2d at 1018.

## B.

Fulmer argues alternatively that he is entitled to relief from the sale order because it was obtained through fraud on the court. A federal court has inherent equitable power to vacate a judgment that is obtained by fraud on the court. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944). A finding of fraud on the court, however, "is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel." *Landscape Props., Inc. v. Vogel*, 46 F.3d 1416, 1422 (8th Cir. 1995). The category is narrowly defined, and does not include "fraud between the parties or fraudulent documents, false statements or perjury." *United States v. Smiley*, 553 F.3d 1137, 1144 (8th Cir. 2009) (internal quotation omitted).

Fulmer's amended complaint falls short of meeting this demanding standard. Few, if any, of the alleged facts involve conduct directed at the court in the sale proceedings. Fulmer instead repeats his account of the undisclosed agreement between Ball and the Sager Creek Defendants, and the Fiduciary Defendants' alleged role in helping Sager Creek win the auction with an overvalued bid. He then states that "[n]ot a candid word of the scheme was disclosed to the Court at the 2/12/14 sale hearing." But nondisclosure, even of a side agreement affecting the outcome of a § 363 sale, does not rise to the level of fraud on the court. We rejected such a claim in *Landscape Properties*, holding that a bankruptcy attorney's failure to disclose a potentially collusive agreement between prospective bidders "d[id] not even come close to meeting that standard." 46 F.3d at 1422. Fulmer's amended complaint thus fails to state a plausible claim for fraud on the court.

Fulmer next contends that he should be granted relief from the sale order under Federal Rule of Civil Procedure 60. That rule, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024, sets out grounds upon which a court may relieve a party from a final judgment or order. Fulmer cites Rule 60(b)(4), which allows relief when a "judgment is void," so long as a motion for relief is filed "within a reasonable time." Fed. R. Civ. P. 60(c)(1).

Fulmer argues that the sale order is "void" in light of *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017). In *Jevic*, the Supreme Court considered whether a bankruptcy court may approve the dismissal of a Chapter 11 case that would distribute assets to creditors in violation of the priority rules that govern normal distribution plans, without the consent of the affected creditors. *Id.* at 983. The Court held that such structured dismissals are not permitted. *Id.* Fulmer asserts that the § 363 sale of the Allens assets violated the Bankruptcy Code's priority rules in a similar way—that is, that certain creditors with unsecured claims received value while others with identical priority did not.

*Jevic* does not win the day for Fulmer. For one thing, *Jevic* involved a structured dismissal and did not hold that § 363 sales must conform to normal priority rules. In fact, the Court noted that some courts in other contexts have approved priority-violating distributions where they serve "significant Code-related objectives," such as maximizing the value of the bankruptcy estate. *Id.* at 985. But even if the reasoning of *Jevic* on priority rules were extended to § 363 sales, it would not apply in the context of a consummated sale. Whatever force the Bankruptcy Code's priority rules might have at a sale approval hearing or on direct review of a § 363 sale, *see id.* at 986, a deviation from those rules does not render final judgments "void." *See Espinosa*, 559 U.S. at 273-76 (holding confirmed bankruptcy plan was not void for purposes of Rule 60(b)(4) despite failing to comply with statutory requirement); *cf. In re Old Cold LLC*, 879 F.3d 376, 388 (1st Cir. 2018) (holding that *Jevic* did not add an exception to the text of § 363(m) concerning validity of a sale).

C.

Fulmer also contends that the bankruptcy court erred by denying as futile his motion for leave to amend his complaint. In the proposed amendment, Fulmer sought to raise a claim under Rule 60(b)(4) that the § 363 sale was void for lack of due process. Due process in bankruptcy generally entitles a party to receive the notice specified in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and a judgment is void if the bankruptcy court acted in a manner inconsistent with due process. *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008).

Fulmer's proposed due process claim is premised on his assertion that the defendants secretly agreed to transfer value from Allens to Sager Creek in the form of avoidance claims and real estate that were purchased for no additional consideration. Fulmer's proposed amendment alleges that notice was lacking because the alleged agreement remained undisclosed. This nondisclosure, he asserts, deprived the other interested parties of the ability and incentive to scrutinize Sager Creek's final bid.

The terms of the Sager Creek bid to which Fulmer principally objects, however, were stated on the record at the auction hearing. The other interested parties, including more than 5,000 known creditors, received timely notice of the auction and the subsequent sale approval hearing. The record before the bankruptcy court contained the auction transcript and the final versions of the purchase agreements. And interested parties were permitted to file objections in the approval hearing. These proceedings thus afforded interested parties adequate notice and opportunity to be heard with respect to their claims on the Allens estate. If any wrong was perpetrated by the maintenance of a secret agreement among the defendants, it was not a deprivation of due process in the bankruptcy court. The February 2014 sale order is not void for lack of due process, and such a claim would have been futile.

Fulmer's proposed amendment also adds details about the disputed transactions, but the alleged acts remain the same. Fulmer asserts that the Sager Creek Defendants and Ball had much to lose if Seneca ended up as the successful bidder for Allens's assets. The Sager Creek Defendants and Ball made an agreement to support Sager Creek Acquisition Corp., Fulmer claims, and they did not adequately disclose that agreement. The Fiduciary Defendants allegedly played a role by overvaluing Sager Creek's last-minute bid. Fulmer contends that although the bankruptcy court approved the sale, the court acted without an adequate understanding of how the bids compared to one another.

Fulmer's claims in the proposed amendment, like those in the complaint that was dismissed, would undercut the principal findings of the February 2014 sale order, because they are premised on the alleged inferiority of Sager Creek's bid. They are thus barred by the finality rule governing asset sales under § 363. *See Regions Bank*, 387 F.3d at 731-32; *In re Met-L-Wood*, 861 F.2d at 1017-18. As for fraud on the court, despite new conclusory language, the proposed complaint does not point to any affirmative misrepresentation on a defendant's part that was directed to the bankruptcy court. The bankruptcy court thus did not err in concluding that the proposed amendment would be futile.

\* \* \*

The judgment of the bankruptcy court is affirmed.

_____