_____

No. 96-1664
_____

United States of America,        *
                                 *
    Plaintiff/Appellee,          *
                                 *    Appeal from the United States
    v.                           *    District Court for the
                                 *    Eastern District of Missouri.
Craig Walker,                    *
                                 *
    Defendant/Appellant.         *

_____

                    Submitted:   September 12, 1996

                    Filed:   October 3, 1996
_____

Before FAGG, BEAM, and MURPHY, Circuit Judges.
_____


MURPHY, Circuit Judge.


    Craig Walker was convicted by a jury of conspiracy to commit mail
fraud, mail fraud, conspiracy to obstruct justice, and subornation of
perjury.  The district court[1] sentenced him to thirty-three months in
prison and he appeals from the judgment.  We affirm.


    The convictions stem from Walker's participation in a scheme designed
to ensure the reelection of Vivrus Jones, the Comptroller of the City of
St. Louis.  Jones, who is African-American, was opposed by James
Shrewsbury, who is white.  Based on past elections, it was expected that
Jones would receive the vast majority of the votes of African-Americans,
and Shrewsbury would

_____

    [1]The Honorable Carol E. Jackson, United States District
Judge for the Eastern District of Missouri.

receive most of the votes of whites. In order to ensure his reelection, Jones and others devised a scheme in which a second white candidate, Penny Alcott, would enter the race in order to draw votes from Shrewsbury. Alcott's campaign focused on wards in the south side of St. Louis, where the population was predominantly white. Walker was a personal friend of Jones who had represented St. Louis in bond deals. Part of the scheme involved his providing funds for Alcott's campaign. The true source of the funds was hidden by having a friend of his in Chicago, John Runyan, make a contribution and a loan to the Alcott campaign with money Walker had provided. The basis for his mail fraud conviction was a false campaign finance disclosure report that was sent through the mail.

Walker contends that the district court improperly instructed the jury regarding the conspiracy to commit mail fraud and the mail fraud charges, denying him the right to a unanimous jury verdict. See Andres v. United States, 333 U.S. 740, 748, 68 S.Ct. 880, 884, 92 L.Ed. 1055 (1948). The indictment stated that the objects of the mail fraud and the conspiracy were to deprive the people of the State of Missouri and the City of St. Louis of both the Comptroller's salary and the intangible right to honest services. The court instructed the jury that in order to convict Walker of either conspiracy to commit mail fraud or mail fraud, at least one of the objects of the fraud had to be proved beyond a reasonable doubt. Walker argues the instructions were defective because they did not require the jury to agree unanimously on the same object.

The court instructed the jury that "in order to return a verdict of guilty, you must unanimously agree upon which of the objects or purposes was the subject of the conspiracy." She also provided the jury with a special verdict form that contained independent questions on each of the objects of the fraud. The first question asked whether Walker knowingly participated in a scheme to defraud the people of the honest services of Jones and Alcott. The second asked whether Walker knowingly participated in

2

a scheme to defraud the people of the Comptroller's salary and other benefits of a fair election. The jury answered yes to each of these questions. The jury was adequately instructed on the unanimity requirement, and the instructions were not constitutionally defective.

Walker asserts that the district court erred by not instructing the jury that the testimony of a perjurer should be treated with caution. According to Walker, John Runyan was the government's key witness against him and had pleaded guilty to perjury. Walker cites United States v. Partin, 493 F.2d 750 (5th Cir. 1974), in support of his position that a special instruction was needed on the credibility of a perjurer.

The court instructed the jury on the testimony of someone who has testified falsely:

> If a person is shown to have knowingly testified falsely
> concerning any important or material matter, you
> obviously have a right to distrust the testimony of such
> an individual concerning other matters. You may reject
> all of the testimony of that witness or give it such
> weight or credibility as you may think it deserves.

Jury Instruction 6A. This was sufficient guidance, and a separate instruction on perjury was not required. The particular wording contained in the instruction does not matter so long as it adequately covers "the substance of the requested instruction." United States v. Rankin, 902 F.2d 1344, 1347 (8th Cir. 1990); United States v. Ridinger, 805 F.2d 818, 821 (8th Cir. 1986); United States v. Reda, 765 F.2d 715, 719 (8th Cir. 1985). Here the district court gave an instruction dealing with false testimony which was not the case in Partin.

Walker also complains that the government's cross-examination of him about income not reported on his tax returns was

3

inflammatory and prejudicial. Walker had claimed on direct examination that he had cash flow problems and therefore could not have been the source of the funds Runyan contributed to Alcott's campaign. The government later asked Walker whether he had income not mentioned on his tax return. The cross-examination was not improper because it related to his testimony on direct examination about his available funds. The testimony was relevant and probative, and the district court did not abuse its discretion in permitting it.

Walker also raises a number of other claims which we have reviewed and find without merit.[2]

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]These claims are that the district court erred by (1) limiting testimony relating to Penny Alcott's decision to enter the race; (2) maintaining bond conditions on him that affected his ability to represent himself; (3) excluding expert testimony on past election schemes in St. Louis; (4) not granting judgment in his favor; (5) rejecting his claim of selective prosecution; (6) not dismissing the indictment; and (7) imposing a sentencing enhancement for an offense involving a public official.