# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1599

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Julie Ann Miller, also known as | * | |
| Julie Johnson, also known as | * | |
| Julie DeBruin, also known as | * | |
| Julie Kerns, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 18, 2004
Filed: August 19, 2005

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Julie Miller appeals the restitution portion of her sentence[1] in this direct criminal appeal. We affirm.

_____

[1]The Honorable Linda Reade, United States District Judge for the Northern District of Iowa.

## I.    BACKGROUND

In January 2001, in Bellevue, Iowa, Miller's paramour killed his roommate, Greg May. While Miller was not criminally charged in May's death, she did help her boyfriend remove the body from the house. She later helped her boyfriend clear out the residence, including May's belongings. The pair sold some of May's belongings, gave other things to friends and to Goodwill, but loaded the remainder, including an extensive antique Civil War collection, into a moving van, and the two absconded to Arizona. Miller contends that she did not know which items in the moving van belonged to her boyfriend, and which belonged to May. Along the way to Arizona, Miller helped to either sell off or destroy many of May's belongings.

Once caught, Miller pled guilty to interstate transport of stolen property. In addition to a 37-month sentence, Miller was ordered to pay $122,165 in restitution pursuant to the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A (MVRA). The restitution order is the only portion of Miller's sentence being challenged in this direct appeal. Miller stipulated in her plea agreement that the value of May's personal belongings was between $120,000 and $200,000. But some of that loss was recovered by law enforcement. And, the presentence investigation report (PSR) indicated that restitution was still being investigated and would be set at a later date.

At the sentencing hearing, Officer Rahn testified that law enforcement had not been able to recover all of May's belongings, and he also acknowledged that there was no inventory of or insurance records regarding the estate. Rahn noted that Miller had actually made a list of items to be sold, apparently in an attempt to keep track of the couple's inventory. Rahn also testified about pictures of both Miller and her boyfriend taken on the journey to Arizona, which showed some of May's collection that had not yet been recovered.

May's son testified that he knew from personal experience, and from interviewing friends and other family members, that his father's Civil War collection was extensive. Prior to the sentencing hearing, the son completed a "declaration of loss" statement for the probation office, containing a list of items worth $42,165, which he believed was a partial list of what was stolen from the estate. At sentencing, the son also produced Exhibit 14, which showed additional losses to his father's estate in the amount $80,000 for lost property (which included personal property other than the Civil War collection), and $15,000 in cash that his father usually kept in the residence. In addition to the aforementioned friends and family, May spoke with an antique firearms appraiser in coming up with the total valuation for Exhibit 14.

## II.    DISCUSSION

We review for clear error the district court's determination of the amount of restitution under the MVRA. United States v. Fogg, 409 F.3d 1022, 1028 (8th Cir. 2005). The government has the burden of proving the amount of restitution by a preponderance of the evidence. United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001). Our circuit has determined that the preponderance-of-evidence burden in restitution cases is unchanged by the United States Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738 (2005). United States v. May, 413 F.3d 841, 849 (8th Cir. 2005) (finding "persuasive" cases from our sister circuits which hold that Apprendi, Blakely, or Booker do not affect the manner in which restitution findings can be made).

Miller contends that the government's evidence regarding the final loss to the victim's estate, after discounting the items which were ultimately recovered, was not sufficiently reliable for sentencing purposes. Relying on Young, 272 F.3d 1052, Miller also argues that allegations in the plea agreement or the PSR do not bind her to a specific amount of restitution. The defendant in Young challenged the amount of restitution awarded for the victim's lost profits. The government argued that the

defendant was bound by unobjected-to admissions regarding lost profits in the PSR. However, the PSR in Young only recounted the victim's *estimate* of lost retail sales, and contained no independent documentation verifying the estimate. Also, the PSR acknowledged that the amount of restitution owed was uncertain. At sentencing, the victim elected not to testify, and the government therefore provided no evidence regarding lost profits. On appeal, the defendant argued that the government's proof for the restitution amount was lacking. We agreed, and held that "[b]ecause the district court relied only on the victim's 'uncertain' estimate [in the PSR] in ordering restitution for lost profits" the district court committed clear error in determining the amount of restitution. Id. at 1056.

Young is distinguishable. In the instant case, the government did not simply rely upon the PSR or stipulated facts from the plea agreement, but instead presented a plethora of restitution evidence at the sentencing hearing. As indicated, Officer Rahn testified about items from May's estate that were sold and never recovered, based upon, among other things, photographs of Miller and her boyfriend. May's son testified that in order to discover the extent of his father's collection, he interviewed family, friends and fellow collectors. The son also produced an inventory list for the probation office and another one for the sentencing hearing, assigning the value to the still-missing items (including cash) at $137,165. These assigned values were based upon personal recollection, and consultations with family, friends, and a source knowledgeable about Civil War weaponry.

The government concedes that there is some overlap in the son's two lists, specifically $6,900 attributed to a train, phonographs, and movie posters. The government argues, however, that Miller failed to object to any double-counting at the sentencing hearing, and in any event, other items on both lists were not assigned any value, nullifying the effect of the double-counting.

We find that the government met its burden of proving the amount of restitution by a preponderance of the evidence. As stated above, the government put on extensive proof at the sentencing hearing, and produced exhibits assigning value to the estate. Government witnesses provided explanations for items on the list and how their values were calculated. And, while acknowledging that it was not her burden to do so, we note that Miller certainly did not put forth any contrary evidence with regard to valuation.

Finally, we agree with the government's argument about double-counting. We note that certain items were not accounted for in the final totals–most notably in Exhibit 14, where May's son estimated that May kept $15,000 in cash at the residence. Clearly the district court did not take the missing cash into account in figuring restitution, because the total–$122,165–equals the exact amount attributed to missing property (minus suspected missing cash) on both inventory lists. Accordingly, we find the district court did not clearly err in setting restitution in the amount of $122,165.

Miller also argues that the district court ordered restitution without making findings about her ability to pay restitution. However, the amount of restitution in this case was set pursuant to the MVRA, which provides that restitution is mandatory, and shall be imposed "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Instead, "[t]he offender's ability to pay is relevant only in determining whether restitution should be paid by lump sum, a schedule of payments, or nominal payments." United States v. Gray, 175 F.3d 617, 617-18 (8th Cir. 1999). Here the district court required Miller to begin paying by having her prison wages garnished, and made provisions for future payments when Miller is placed on supervised release. Thus, we find no error on this point.

## III. CONCLUSION

We affirm the restitution order set by the district court.

_____