# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2584

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| William D. Pierce, | * | |
| | * | |
| Appellant. | * | |

_____

No. 06-2585

_____

Appeals from the United States
District Court for the
District of Minnesota.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Shirley Best Pierce, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 12, 2007
Filed: March 8, 2007

_____

Before WOLLMAN and MELLOY, Circuit Judges, and NANGLE,[1] District Judge.

_____

NANGLE, District Judge.

After a jury trial, Defendant-Appellants William Pierce and Shirley Pierce, husband and wife, were convicted of one count of conspiracy against the United States, in violation of 18 U.S.C. § 371; three counts of filing false tax returns, in violation of 26 U.S.C. § 7206(1); four counts of mail fraud, in violation of 18 U.S.C. § 1341; and, five counts of wire fraud, in violation of 18 U.S.C. § 1343. The district court[2] sentenced Shirley Pierce to a thirty-month term of imprisonment, to be followed by three years of supervised release, and sentenced William Pierce to a thirty-seven month term of imprisonment, to be followed by three years of supervised release. The court further ordered Appellants to pay $489,239.65 in restitution to the State of Minnesota.

Appellants jointly appeal their convictions and the amount of the restitution order, raising three points of error. Appellants allege the court erred in: (1) instructing the jury that it "should," rather than "may," find each defendant vicariously liable for the substantive crimes of his/her co-conspirator, if certain circumstances were proven, under Pinkerton v. United States, 328 U.S. 640 (1946); (2) denying the Appellants' request for a special verdict form; and (3) ordering Appellants to pay $489,239.65 in restitution. Appellants urge this Court to remand the case for a new trial and a new restitution hearing. We affirm.

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

## I. BACKGROUND

The convictions at issue in this appeal arise out of the Pierces' management of a not-for-profit charter school, Right Step Academy, which William Pierce established in June 1995 by entering into a charter agreement with St. Paul Public Schools.[3] William Pierce was the executive officer of Right Step Academy, and Shirley Pierce served on the Board of Directors. Pursuant to the charter agreement, William Pierce was to operate the school in accordance with Minnesota state charter law; as officers and directors, the Pierces were subject to fiduciary duties. Minn. Stat. Ann. §§ 317A.251, 317A.361(2006). Right Step Academy was funded by the state and federal governments, and was subject to the same financial audits, audit procedures, and audit requirements as a public school district.

In their operation of Right Step Academy, the Pierces engaged in a number of self-dealing activities, which defrauded the state of Minnesota, as well as the federal government. For over four years, the Pierces diverted funds from Right Step Academy, either directly or indirectly through sham invoices for services allegedly provided by Right Group.[4] Furthermore, the Pierces failed to include the diverted funds as income in their joint tax returns, and falsely characterized personal expenses as business expenses.

In addition to the fraudulent transactions conducted between Right Step Academy and Right Group, and the falsehoods and omissions in their tax preparation,

[3]St. Paul Public Schools is a public school district with authority under state law to sponsor charter schools.

[4] William and Shirley Pierce jointly owned this entity. Payments made to Right Group were not fully disclosed to the Board of Directors of Right Step Academy. The Pierces also failed to inform the Board that William was a co-owner of Right Group and, therefore, operating under a conflict of interest.

the Pierces committed numerous other acts which comprised the heart of the conspiracy charged in the indictment. For instance, they spent school funds on personal items such as car and credit card payments. They also failed to properly operate the school in accordance with the charter agreement, as revealed by an audit of the school performed by St. Paul Public Schools in early 2000. The audit found that the school had many issues with regard to its operation. These issues included a lack of textbooks, educational materials and curriculum, the failure to provide safe transportation, the maintenance of irreconcilable financial records, and the accumulation of debt. As a result of the delinquencies exposed by the audit, in August 2000, St. Paul Public Schools refused to renew Right Step Academy's charter, and Right Step Academy ceased operations.

The grand jury issued an indictment charging the Pierces with a number of counts arising out of their scheme to divert money from Right Step Academy for their own use and benefit, and their failure to report this additional income on their federal tax returns. The Pierces pled not guilty to each charge, and the case went to trial.

Before the case was submitted to the jury, the parties jointly submitted proposed jury instructions. The Pierces unsuccessfully objected to the government's proposed Pinkerton instruction on co-conspirator vicarious liability, Jury Instruction No. 9. The Pierces also requested that a special verdict form be submitted for the conspiracy charge, which would require the jury to specify which object offense(s) the Pierces conspired to commit. However, the district court denied the request and instead gave a specific unanimity instruction.

The jury convicted both defendants of all counts. The district court sentenced Shirley Pierce to thirty months in prison and three years of supervised release, and William Pierce to thirty-seven months in prison and three years of supervised release. The court also ordered the Pierces to jointly and severally make restitution to the State of Minnesota Department of Education ("DOE") in the amount of $489,239.65.

## II. DISCUSSION

### A. Pinkerton Instruction

Appellants allege that the trial court committed reversible error in its instructions to the jury regarding the vicarious liability of co-conspirators under Pinkerton v. United States, 328 U.S. 640 (1946). We review jury instructions for abuse of discretion, and "[i]n so doing, we do not consider portions of a jury instruction in isolation, but rather consider the instructions as a whole to determine if they fairly and adequately reflect the law applicable to the case." United States v. Turner, 189 F.3d 712, 721 (8th Cir. 1999).

The Pierces were charged with conspiring to commit offenses against the United States or defraud the United States in violation of 18 U.S.C. § 371.[5] They were also charged in counts two through thirteen with the substantive offenses of filing false tax returns, mail fraud, and wire fraud. In addition to instructing the jury with respect to each substantive offense charged against each defendant individually, the court delivered a Pinkerton instruction which provided:

> A defendant who has entered into a criminal conspiracy is responsible for offenses committed by fellow conspirators if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the

---

[5]18 U.S.C. § 371 states in relevant part:

If two or more persons conspire either to commit any offense against the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

conspiracy.  Therefore, if you find a defendant guilty of the conspiracy charged in Count 1 and if you find beyond a reasonable doubt that while the defendant was a member of the conspiracy, a fellow conspirator committed an offense charged in Counts 2 through 13 in furtherance of and as a foreseeable consequence of that conspiracy, then you should find the defendant guilty of that offense as well.

Jury Instructions, Instruction No. 9.  Appellants assert that the court's use of the word "should," rather than "may," in the last sentence of the above-quoted language was prejudicial error requiring reversal of their convictions.  Specifically, Appellants argue that the instruction invaded the province of the jury and misstated the relevant law.  Appellants further assert that, but for the erroneous <u>Pinkerton</u> instruction, both Pierces would not have been found guilty of each substantive offense.  We disagree.

The seminal case establishing the co-conspirator vicarious liability doctrine at issue in this appeal is <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946).  In <u>Pinkerton</u>, the Supreme Court held that the overt act of one member of a conspiracy is attributable to all other members of the conspiracy.  <u>Id.</u> at 646.  This Court has held that <u>Pinkerton</u> co-conspirator liability is applicable where the government proves beyond a reasonable doubt the existence of a conspiracy, that the substantive offense was committed in furtherance of the conspiracy, and that the substantive offense was reasonably foreseeable as a natural "outgrowth of the conspiracy."  <u>United States v. Navarrete-Barron</u>, 192 F.3d 786, 792-793 (8th Cir. 1999).

Appellants argue that the pattern jury instructions of the Fifth, Ninth, Tenth and Eleventh Circuits, which use permissive language and instruct the jury that it "may" convict a defendant for the substantive acts of his/her coconspirator if the <u>Pinkerton</u> factors are proven, in contrast to the mandatory instruction given in this case, correctly apply the <u>Pinkerton</u> doctrine.  While each of these Circuits has in fact approved of such permissive language, as has this Court, <u>see e.g.</u>, <u>United States v. DeLuna</u>, 763 F.2d 897, 918 (8th Cir. 1985) (overruled on other grounds), each has also approved

instructions containing mandatory language similar to that used by the district court in this case.  For instance, in <u>United States v. Basey</u>, 816 F.2d 980 (5th Cir. 1987), the Fifth Circuit cited with approval language instructing the jury that if "they were satisfied beyond a reasonable doubt that a conspiracy existed and that a defendant was one of the members of it, then that defendant assumed the responsibility for the acts and statements of all other members made in furtherance of the conspiracy."  <u>Id.</u> at 998 (citation omitted); <u>see</u> <u>also</u> <u>United States v. Thomas</u>, 348 F.3d 78, 84 (5th Cir. 2003) (finding that the charge correctly stated the law and court committed no error where instruction used mandatory language).

Similarly, the Ninth, Tenth, and Eleventh Circuits have each either approved of a mandatory <u>Pinkerton</u> charge or interpreted <u>Pinkerton</u> as  requiring a jury to find a co-conspirator vicariously liable when the <u>Pinkerton</u> factors are met.  <u>United States v. Kato</u>, 878 F.2d 267, 270-71 (9th Cir. 1989) (holding that the mandatory <u>Pinkerton</u> charge was not erroneous); <u>United States v. Willis</u>, 102 F.3d 1078, 1083 (10th Cir. 1996) (stating that under <u>Pinkerton</u>, "the co-conspirator has criminal responsibility <u>unless</u>" the substantive offense committed by a co-conspirator fell outside the scope of the conspiracy or was not a reasonably foreseeable consequence of the conspiracy); <u>United States v. Broadwell</u>, 870 F.2d 594, 602, n.18 (11th Cir. 1989) (characterizing <u>Pinkerton</u> as holding "that each member of a conspiracy <u>is</u> criminally liable for all reasonably foreseeable crimes committed during the course and in furtherance of the conspiracy.") (emphasis added).

Therefore, while the pattern instructions of other Circuits may indicate a <u>preference</u> for permissive language in those Circuits,[6] the law of the Circuits does not, as argued by Appellants, establish precedent standing for the proposition that

---

[6] We note that the Seventh Circuit's <u>Pinkerton</u> pattern jury instruction employs the mandatory language "should" rather than "may." Fed. Crim. Jury Instr. 7th Cir. 5.10 (1999).

mandatory <u>Pinkerton</u> instructions are erroneous.[7]  Rather, the instructions and cases illustrate that both mandatory and discretionary <u>Pinkerton</u> instructions are fair statements of the law, so long as each element of the <u>Pinkerton</u> doctrine is included in the instruction.  Furthermore, this Court has affirmed a lower court's decision where the court's <u>Pinkerton</u> instructions contained both permissive and  mandatory language.  <u>United States v. Hayes</u>, 391 F.3d 958, 963 (8th Cir. 2004).[8]

We find that the instructions issued by the district court in this case, which incorporated the key elements of <u>Pinkerton</u> liability,[9] correctly and adequately stated

---

[7]Appellants also cite to <u>United States v. Blackmon</u>, 839 F.2d 900 (2d Cir. 1988) as support for their proposition that mandatory <u>Pinkerton</u> instructions are erroneous. In <u>Blackmon</u>, the Second Circuit stated that it "seem[ed]" the discretionary instruction was a correct statement of the law.  <u>Id.</u>  at 910.  However, the court also noted the existing "lack of clarity in the cases as to the mandatory/discretionary dichotomy," and did not explicitly hold that a mandatory instruction was erroneous.  <u>Id.</u> at 910, n.12.  Rather, the court found that "it was clearly prejudicial error to [first] give a discretionary <u>Pinkerton</u> instruction at the close of the trial, upon the basis of which defense counsel made their summations, and then switch to a mandatory charge in response to an inquiry by the jury during its deliberations." <u>Id.</u> at 910.  Such facts and resulting prejudice are not present in this case, and Appellants' interpretation of and reliance upon <u>Blackmon</u> is misplaced.

[8]We recognize that in <u>Hayes</u> we were not deciding the <u>Pinkerton</u> issue presently before this Court.  However, in <u>Hayes</u> we approved of the district court's <u>Pinkerton</u> instruction to the jury, which stated in part that "the jury . . . <u>may</u> consider acts knowingly done . . . by a defendant's co-conspirators . . .[A] person who knowingly, voluntarily and intentionally joins an existing conspiracy <u>is</u> responsible for all of the conduct of the co-conspirators from the beginning of the conspiracy."  <u>Hayes</u>, 391 F.3d at 963 (emphasis added).

[9]The court instructed the jury that "[a] defendant who has entered into a criminal conspiracy is responsible for offenses committed by fellow conspirators if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of and as a foreseeable consequence of the conspiracy."

the relevant applicable law, and were given within the sound discretion of the trial court. In any event, considering the totality and thoroughness of the instructions given to the jury, the use of the word "should" instead of "may" therein, would, at most, amount to harmless error.

### B. Special Verdict Form

Appellants contend the district court erred when it declined to give the jury a special verdict form for count one, the multiple-object conspiracy charge. We review a district court's decision to deny a request for a special verdict form under an abuse of discretion standard. United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005).[10] "As a general rule, courts avoid using special verdict forms because of their potential for confusing a jury." United States v. Williams, 902 F.2d 675, 678 (8th Cir. 1990).

At trial, the Pierces requested that a special verdict form be submitted for count one, which would require the jury to specify which object offense(s) the jurors unanimously agreed the Pierces conspired to commit. The court denied the request and, instead, gave a specific unanimity instruction as follows:

> The indictment charges a conspiracy to commit three separate crimes or offenses. It is not necessary for the Government to prove a conspiracy to commit all of those offenses. It would be sufficient if the Government proves, beyond a reasonable doubt, a conspiracy to commit one of those offenses; but, in that event, in order to return a verdict of guilty, you must unanimously agree upon which of the three offenses was the subject of the conspiracy. If you cannot agree in that manner, you must find the defendant not guilty.

---

[10]Upon review of the record, we find that because Shirley Pierce failed to object to the use of a general verdict form for count one, we review this issue for "plain error resulting in a miscarriage of justice" with respect to Shirley Pierce. United States v. Manzer, 69 F.3d 222, 229 (8th Cir. 1995).

Jury Instructions, Instruction No. 13. The Pierces contend that the court's failure to employ a special verdict form, in conjunction with the alleged erroneous <u>Pinkerton</u> instruction, allowed the jury to convict both Pierces of each substantive charge, via <u>Pinkerton</u> vicarious liability, without a unanimous finding of guilt with respect to each object of the conspiracy. The Pierces argue that this error is prejudicial because <u>Pinkerton</u> liability only applies to the substantive acts committed in furtherance of the object(s) of the conspiracy for which the jury found the Pierces guilty.[11]

Appellants' contention is without merit. First, Appellants misstate the proposition for which <u>United States v. Walker</u>, 97 F.3d 253 (8th Cir. 1996), stands, arguing that we favorably noted a court's use of a special verdict form when instructing the jury on a multiple-object conspiracy count. While it is true that the lower court in <u>Walker</u> gave both a unanimity instruction as well as a special verdict form, nothing in <u>Walker</u> suggests that a special verdict form is required or favored. <u>Id.</u> at 255.

In the instant case, the court cured any risks inherent in count one by instructing the jury that they must be unanimous on at least one object of the conspiracy in order to find the defendants guilty of count one. <u>See</u> <u>United States v. Rabinowitz</u>, 56 F.3d 932, 933 (8th Cir. 1995). "We assume, as we must, that the jury followed these instructions." <u>United States v. Nattier</u>, 127 F.3d 655, 658 (8th Cir. 1997) (citation omitted).

Second, as discussed above, the <u>Pinkerton</u> instruction given in this case was not erroneous. Appellants' claim that a special verdict form was required in count one is based on an underlying contention that <u>Pinkerton</u> liability only applies to the

---

[11]We note that Appellants cite no law in support of their contention that <u>Pinkerton</u> vicarious liability applies only to the substantive offenses related to the object offense that the jury found them guilty of conspiring to commit.

substantive acts in furtherance of the objects of the conspiracy that formed the basis of the conspiracy convictions. Conspiracy defendants are not entitled to limit their potential <u>Pinkerton</u> vicarious liability to only those substantive offenses they believe are directly related to the object offense underlying the conspiracy conviction. A conspiracy conviction triggers potential <u>Pinkerton</u> liability, which encompasses all reasonably foreseeable acts committed in furtherance of the conspiracy. <u>United States v. Pinkerton</u>, 328 U.S. 640 (1946). Here, the jury convicted Appellants of entering into an unlawful agreement to defraud the United States and commit offenses against the United States in violation of 18 U.S.C. § 371. Each of the three sets of object offenses—fraudulent tax returns, mail fraud and wire fraud—further the general agreement and are multiple facets of one conspiracy.[12] Consequently, the <u>Pinkerton</u> instruction was applicable to each substantive offense because these acts, counts two through thirteen, were committed in furtherance of the single conspiracy.

Even assuming that Appellants' contention has merit, any conceivable error resulting from the refusal to use a special verdict form is harmless. Accordingly, we find that the district court did not abuse its discretion or commit plain error in denying Appellants' request for a special verdict form.

---

[12]We disagree with Appellants' assertion that the tax fraud object was "very distinct" from the mail and wire fraud objects. The tax returns were fraudulent because they concealed and mischaracterized the income acquired by means of mail and wire fraud. We find that the acts of tax, mail and wire fraud were part of a larger conspiracy to defraud the Government by misappropriating funds from Right Step Academy for the Pierces' own personal use. <u>See</u> 16 American Jurisprudence § 11 (2d.) (explaining that "[t]he principal considerations in determining the number of conspiracies proven are the existence of a common goal, the nature of the scheme, and the overlapping of the participants in various dealings . . . Where there is one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement constitutes a single conspiracy even though every coconspirator does not take part in every conspiracy transaction.").

## C. Restitution

On appeal, the Pierces do not contest the district court's decision to order restitution. Rather, Appellants' argument centers around the amount of restitution ordered and the evidentiary basis of the award. The district court found that the State of Minnesota was a victim of the Pierces' fraud, and, pursuant to 18 U.S.C. § 3663A(a)(1),[13] ordered the Pierces to pay $489,239.65 in restitution. Appellants argue that the district court erred in calculating the amount of loss the DOE suffered. We review the district court's decision to order restitution for an abuse of discretion. United States v. French, 46 F.3d 710, 715 (8th Cir. 1995). The district court's factual determinations underlying an order for restitution are reviewed for clear error. United States v. Oslund, 453 F.3d 1048, 1062 (8th Cir. 2006). The burden is on the government to prove the amount of restitution based on a preponderance of the evidence. Id.[14] To satisfy the preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." In re Winship, 397 U.S. 358, 371(1970) (citation omitted).

Prior to sentencing, based on the DOE's Victim Impact Statement, the probation office prepared a presentence report delineating the amounts claimed for restitution.[15] The Pierces objected to the claim for restitution made by the DOE.

---

[13] Section 3663A(a)(1) requires that a court order restitution when a defendant has been convicted of an offense against property, including an offense committed by fraud or deceit. 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii).

[14] We have determined that the evidentiary standard in restitution cases is unchanged by United States v. Booker, 543 U.S. 220 (2005). United States v. Miller, 419 F.3d 791, 792 (8th Cir. 2005).

[15] According to the Victim Impact Statement, the DOE paid state and federal funding aid to Right Step Academy for the purpose of educating students.

Thereafter, the court held an evidentiary hearing to assess the amount of restitution to be imposed.

At the hearing, Audrey Bomstad of the DOE's Program Finance Division detailed how the DOE arrived at its figures, and testified that the State suffered a loss of $489,239.65. Ms. Bomstad testified that at the end of each fiscal year, the DOE conducts a reconciliation process, which compares monies distributed to a school with the school's actual expenditure of those funds. The school is responsible for submitting its financial information, including its revenues, expenditures, and fund balances to the DOE to facilitate the  reconciliation process. Based on the reconciliation process, the DOE determines whether it overpaid or underpaid the school, and corrects funding as necessary. If a school fails to submit the required audit reports or financial records documenting the expenditure of certain funds, the DOE will deem those funds to be an overpayment. This policy is due to the fact that without proper financial data the DOE cannot verify whether the DOE funds were spent for valid expenditures.

In this case, Right Step Academy failed to maintain accurate financial records, and failed to submit audit reports as required. Therefore, information was unavailable to determine whether the expenditures of certain funds were legitimate or fraudulent, and those funds were included as overpayments in the DOE's calculation. Furthermore, Right Step Academy mistakenly received funds it was not entitled to, and failed to return the funds to the State.

Appellants contend that Ms.Bomstad based her calculations upon Right Step Academy's lack of documentation, rather than the DOE's actual loss. Appellants argue that, although, Right Step Academy was unable to supply the DOE with audited proof that the funds were put to legitimate uses, the funds were properly used. Curiously, at the evidentiary hearing Appellants did not put forth any evidence

detailing how Right Step Academy appropriately spent funding it received from the State of Minnesota.[16]

This Circuit has held that "[t]he district court has wide discretion in ordering restitution." United States v. Ross, 210 F.3d 916, 924 (8th Cir. 2000); United States v. Manzer, 69 F.3d 222, 229 (8th Cir. 1995). In Manzer, we upheld a $2.7 million restitution award based on the evidence and analysis that supported calculation of amount of loss for sentencing purposes. Manzer, 69 F.3d at 230. Referring to U.S.S.G. § 2F1.1, we stated that "[t]he district court's calculation of the amount of loss, however need not be precise . . .The court need only make a reasonable estimate of the range of loss, given the available information." Id. at 228 (citing U.S.S.G § 2F1.1, comment. (n.8)).

In this case, the difficulty in calculating a precise amount of loss is attributable to the lack of sufficient financial records documenting the manner in which Right Step Academy utilized the funds granted to the school by the DOE. The St. Paul Public School's audit revealed that Right Step Academy was delinquent in submitting audited financial statements and maintained irreconcilable financial records. In response to the auditors' request for complete financial records, Shirley Pierce directed employees to prepare false and fraudulent documents to justify certain payments. Furthermore, the facts, as found by the district court, indicate that Right Step Academy received most of its funding from the State of Minnesota, and the Pierces fraudulently used these funds for their personal benefit.

---

[16]We acknowledge that it was not the Pierces' burden to submit rebuttal evidence at the evidentiary hearing, however we note that the Pierces relied solely on the testimony solicited through cross-examination of Ms. Bomstad to rebut the DOE's claim for restitution.

Therefore, given the available information and the district court's wide discretion in ordering restitution, we hold that the district court did not err in ordering defendants to pay restitution in the amount of $489,239.65.

## III. Conclusion

Accordingly, we affirm the judgment of the district court.

_____