# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3205

_____

United States of America,

        Appellee,

v.

Angela Smiley,

        Appellant.

\*
\*
\*   Appeal from the United States
\*   District Court for the Eastern
\*   District of Missouri.
\*
\*
\*
\*

_____

Submitted: June 11, 2008
Filed: January 26, 2009

_____

Before LOKEN, Chief Judge, COLLOTON, Circuit Judge, and PIERSOL[1], District Judge.

_____

PIERSOL, District Judge.

After pleading guilty to mail fraud and failure to pay over federal taxes, Defendant and Appellant Angela Smiley was originally sentenced to 36 months of imprisonment. Seven days after Smiley was originally sentenced the Government moved to vacate her sentence, contending that Smiley had improperly failed to identify for United States Probation an interest she was holding in a condominium in

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

Florida. The district court vacated the original sentence and eventually sentenced Smiley to seventy-two months of imprisonment and ordered restitution in the amount of $674,691.41. On appeal Smiley contends that the district court lacked the authority to vacate her original sentence and resentence her. Smiley also challenges the amount of restitution ordered by the district court. We reverse the district court's order vacating Smiley's original sentence and the district court's resentencing of Smiley but affirm the district court's order of restitution.

**I.** *Background*

Defendant and Appellant Angela Smiley was the president of American Payroll Service (APS). APS offered business clients payroll and payroll tax services which included the preparation of IRS forms and the transmission of federal tax deposits. At Smiley's direction APS drafted funds directly from its business clients' bank accounts for the purpose of paying its APS business clients' federal tax liabilities, but on numerous occasions failed to pay the clients' federal tax liabilities. Instead of forwarding the funds to the IRS, Smiley used the funds to pay APS' employees' payroll and operating expenses, and to pay her own salary and to pay her husband, who was not an APS employee. Smiley made numerous false statements to APS business clients to conceal and further her scheme.

On November 1, 2006, Smiley waived indictment and pleaded guilty to a two-count information for mail fraud and failure to pay over federal taxes for the time frame of January 2001 through September 2004. The plea agreement recommended a final total offense level of 20. The plea agreement also required Smiley to truthfully provide complete information to the United States Probation office (Probation) by completing Net Worth and Cash Flow Statements as well as by signing releases concerning financial information.

Prior to sentencing the Government moved pursuant to 18 U.S.C. § 3664(d)(5) to extend the date for final determination of restitution to no later that 90 days

following the sentencing date. The district court granted this motion. On January 19, 2007, Smiley appeared for sentencing with no objections to the factual statements or application of sentencing guidelines to the facts in the presentence report. The district court found a total offense level of 20 and a criminal history category of 1, with an incarceration range of 33 to 41 months. The district court sentenced Smiley to concurrent terms of 36 months.

On January 26, 2007, a week after the original sentencing, the Government filed a motion to vacate Smiley's sentence. In the motion to vacate the Government contended that when Smiley was interviewed by Probation on November 16, 2006, Smiley failed to disclose an interest she held in a condominium[2] in Florida. The Government further asserted that a notice of foreclosure had been served on this property on October 26, 2006, and that a foreclosure sale was scheduled for February 12, 2007, should Smiley and her husband fail to pay off the loan balance by that time. In addition, the motion represented that Smiley had purchased a $44,000 membership in a golf club in connection with the condominium. It was later revealed that the membership in the golf club was terminated as there were no payments made on it after October of 2006.

On January 26, 2007, the same date that the motion to vacate was filed, the district court entered an Order Vacating Sentence. The order vacating the sentence referenced clear error under FED. R. CR. P. 35[3] as the basis for vacating Smiley's original sentence. This order also required Smiley to provide a true and accurate

---

[2]A Special Agent with the Internal Revenue Service, Criminal Division, later testified that the condominium was a time share. Smiley later testified that she and her husband held a one-eighth fractional interest in the property.

[3]FED. R. CR. P. 35(a) provides: "Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."

statement of her assets to the United States Probation Office and for Probation to prepare a revised Presentence Investigation Report.

After Smiley made the subsequent disclosure of assets, the Government challenged the accuracy and completeness of the information, and the district court granted the Government's motion for further fact finding. On February 23, 2007, the district court ordered Probation to: 1) obtain an inventory and appraisal of Smiley's personal possession, including home furnishings and vehicles owned and/or titled to Smiley; 2) obtain valuation of Smiley's husband's companies; 3) obtain a minimum of two years of bank statements from each and every personal and business account of Smiley and her husband; and 4) obtain a detailed listing of assets transferred by Smiley and/or her husband from the date of her initial appearance of November 1, 2006.

On March 15, 2007, the Government, in seeking an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), contended that the three Net Worth and Monthly Cash Flow Statements completed by Smiley on November 14, 2006, and those completed after the original sentencing failed to accurately and completely disclose assets. The Government alleged that Probation in conducting its inventory of the Smiley home located undisclosed assets including a 1969 classic GTO vehicle.[4] The inventory also located financial documents from the summer of 2006 indicating that Smiley had transferred more than $851,000 in stocks to satisfy bank debts, a contract transferring a business from Smiley's father-in-law to Smiley's husband, and April 14, 2006 Personal Financial Statements to a bank in which Smiley asserted an individual net worth of $2,574,000. On April 9, 2007, the district court enjoined Smiley, and her husband, mother, father and father-in-law from affecting the availability or value of Smiley's individually or jointly-held property or marital property, without seeking

---

[4]The vehicle was titled in the name of Smiley's father-in-law but had been used by Smiley's husband for many years.

-4-

prior approval from the district court. The district court also revoked Smiley's bond after finding that Smiley had misled Probation with regard to the existence and location of assets. On April 27, 2007, the district court ordered Probation to search a storage container rented by Smiley and her husband and to report the contents of the storage container to the Court. On July 20, 2007, the district court ordered an appraisal of Smiley's personal residence.

On July 14, 2007, Smiley moved to vacate the sentencing hearing which was scheduled for July 16, 2007, on the ground that the district court lacked jurisdiction to proceed since the seven-day period to correct a sentence set forth in FED. R. CR. P. 35 had expired. On the August 23, 2007, hearing on the motion to vacate the sentencing hearing the district court clarified that it was not proceeding under FED. R. CR. P. 35, but had been proceeding on the inherent power of the court to determine whether fraud had been committed on the court at the time of the original sentencing and intended to vacate any sentence if such fraud had been committed.

Smiley appeared for resentencing on August 28 and August 29, 2007. The district court announced that it was proceeding "under the Court's inherent authority to determine whether or not the original sentence imposed on Ms. Smiley was the product of fraud on the court." The district court found that Smiley "failed to disclose any number of things in any number of financial statements" to Probation. The district court stated: "Can I tell you 100 percent what I would do then if I knew everything today I knew on January 19? No one can take that crystal ball and reconstruct it. But I'll be honest. I struggled with whether a below guideline sentence was appropriate. . . ." The original presentence report listed Smiley's net worth as $404,830, and the final presentence report listed her net worth as -$55,387. The district court stated on the record at the August 2007 resentencing that a fraud had been committed on the court based on the totality of the circumstances, which he found as including Smiley lying about being separated from her husband and her

husband's failure to provide financial information,[5] failing to disclose the Florida property, inflating the value of her assets when they were in foreclosure, and failing to disclose judgments of almost two million dollars that were entered against Smiley or her business in January of 2007. The district court stated that although Smiley's conduct after the initial sentencing was not relevant to the determination of fraud, that this conduct was relevant in judging Smiley's credibility. The district court disclosed that he was interested in Smiley being able to make restitution, and that the fraudulent misrepresentations affected his thought process.

The district court resentenced Smiley based on a total offense level of 27, as opposed to the offense level of 20 which was applied at the original sentencing, and resentenced Smiley to a Guidelines sentence of 72 months of imprisonment. The district court also ordered restitution in the amount of $674,691.41.

## II. *Discussion*
*The Power to Vacate Judgments Procured by Fraud*

Smiley contends that the district court erred in concluding that "fraud on the court" gave the district court an independent jurisdictional basis to resentence her. Smiley relies on *Carlisle v. United States*, 517 U.S. 416, 426 (1996), as support for her position that there is no inherent power of the district courts to act in contravention of the 7-day time limit to correct a sentence that is set forth in FED. R. CR. P. 35.

---

[5]Smiley had advised Probation that she was encountering difficulty getting financial information from her husband. The presentence writer in the original report states that Smiley and her husband "were reportedly separated in September 2006 due to the stress of Smiley's current legal situation. . . . The husband was interviewed and confirmed the above information." The final presentence report states basically the same regarding the marriage. Smiley's husband of sixteen years testified at an April 27, 2007, hearing. When asked if he had lived in the same home with her until the time Smiley was detained, the husband responded in the affirmative. The husband also testified that he and Smiley had discussed getting a divorce and that he had not cooperated with Smiley in providing financial information to Probation.

Smiley also relies on *Bowles v. Russell*, 127 S.Ct. 2366 (2007),[6] for the proposition that the federal courts possess "no authority to create equitable exceptions to jurisdictional requirements." Smiley cites to decisions which hold that Rule 35 sets a jurisdictional time limit which cannot be extended. *See United States v. Higgs*, 504 F.3d 456 (3d Cir. 2007); *United States v. Lopez*, 26 F.3d 512 (5th Cir. 1994). The Eighth Circuit has also held that more than seven days after the imposition of a defendant's sentence, a district court has no jurisdiction to alter a sentence, even if the sentence was legally erroneous. *See United States v. Austin*, 217 F.3d 595, 597(8th Cir. 2000)(interpreting former FED. R. CR. P. 35 ( c) which is now set forth in FED. R. CR. P. 35(a)).

In *Carlisle v. United States*, the Supreme Court held that a district court did not have the authority to grant a defendant's untimely motion for judgment of acquittal. The Supreme Court reasoned that FED. R. CR. P. 29 with its 7-day time limit was plain and unambiguous and that the district court had no authority to grant an untimely postverdict motion for judgment of acquittal. The Court rejected the defendant's argument that the district court had acted within its "inherent supervisory power" so as to "circumvent or conflict with the Federal Rules of Criminal Procedure." 517 U.S. at 425-25. Although the Supreme Court acknowledged its earlier recognition of a court's inherent powers in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Court in *Carlisle* rejected reliance on the court's inherent power because it was "unaware of any 'long unquestioned' power of federal district courts to acquit for insufficient evidence *sua sponte*, after return of a guilty verdict." 517 U.S. at 426.

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court held that a district court, properly invoked its inherent power in assessing attorney's fees and related expenses as a sanction for a party's bad-faith conduct in a diversity action. In

---

[6]In this habeas corpus action the Supreme Court ruled it would no longer recognize the unique circumstances exception to excuse an untimely filing of a notice of appeal.

reaching this holding the Court rejected an argument that the Federal Rules of Civil Procedure displaced the inherent power of the courts to maintain an orderly and expeditious disposition of the cases before them. 501 U.S. at 43-44. The Court noted that of "particular relevance" to its holding was the inherent power of federal courts to vacate their own judgments upon proof that a fraud has been perpetrated upon the court. The Court quoted *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46 (1944), in recognizing the "'historic power of equity to set aside fraudulently begotten judgments'"in order to maintain the integrity of the courts and safeguard the public. The Court in *Chambers* also recognized a court's power to conduct an independent investigation in determining whether it has been the victim of fraud. 501 U.S. at 44. However, the Court in *Chambers* also admonished that because of the potency of inherent powers these powers must be exercised with restraint and discretion. *Id.*

The Government challenges Smiley's contention that the inherent power to vacate a judgment procured by fraud, which was recognized in *Chambers,* exists only in the civil context. The Government cites to decisions in which courts have held that district courts have the inherent power to correct criminal sentences which were procured through fraud. *See United States v. Gregg*, No. 04-103, 2006 WL 2850564 (E.D. Pa., Oct. 3, 2006)(order vacated in *United States v. Washington,* 2008 WL 5173327 (3rd Cir. Dec. 11, 2008)); *United States v. Bishop*, 774 F.2d 771 (7th Cir. 1985). In *United States v. Bishop*, the defendant had been convicted in federal district court and his 3-year sentence was stayed pending appeal. The defendant was then convicted in state court and sentenced to a 4-year sentence and an additional thirty-year sentence under the state's habitual offender statute. The defendant requested that the federal sentence be modified to run concurrently with the thirty-four-year state sentence. Although the state court subsequently vacated the habitual offender conviction, the defendant failed to advise the federal district court that this conviction was vacated, and the federal district court granted the modification and sentenced the

defendant concurrently with the state sentence, based on the representation that the defendant was serving a thirty-four-year state sentence.

After the federal district court in *Bishop* learned that the defendant's state habitual offender conviction had been vacated it contacted the Government and held an evidentiary hearing concerning the matter. The district court then found that the defendant had intentionally misrepresented the status of his state convictions and misled the federal district court into believing that he was subject to a sentence of thirty-four years rather than the four-year sentence he was actually serving in the state penitentiary. The district court then vacated its order modifying the defendant's sentence and reinstated its earlier sentence. 774 F.2d at 772-773.

At the time the district court in *Bishop* vacated the order modifying the defendant's sentence FED. R. CR. P. 35(b) provided that the court may amend the sentence within 120 days after the sentence is imposed. Since the 120-day period had expired by the time the court had reimposed his original sentence, the defendant contended the district court was without jurisdiction under Rule 35(b) to reimpose his sentence. The Seventh Circuit concluded that this argument was faulty in that it ignored the district court's inherent power to correct a judgment procured through fraud. 774 F.2d at 773 (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)). The Seventh Circuit further reasoned that the fact the case involved a criminal sentencing process rather than a civil proceeding, such as in *Hazel-Atlas*, was inconsequential. The Seventh Circuit explained, "It is the power of the court to correct the judgment gained through fraud which is determinative and not the nature of the proceeding in which the fraud was committed." 774 F.2d at 774 n.5.

Although *Hazel-Atlas* involved a civil rather than a criminal case, the United States Supreme Court later commented on the power of a court to correct a judgment gained through fraud in a criminal case, *United States v. Smith*, 331 U.S. 469 (1947).

In *Smith* the Supreme Court construed Rule 33 of the Federal Rules of Criminal Procedure and held that because of the 5-day limit on making a motion for new trial under that rule it was improper for the district court to grant a new trial on its own motion more than five days after conviction and after affirmance by the Circuit Court of Appeals. The Supreme Court further held that the Government was entitled to writs of mandamus and prohibition to require vacating the order granting the new trial. Although the Supreme Court found that the district court erred in untimely granting a new trial in *Smith* based only upon the defendant's complaints of errors and irregularities during his trial, the Supreme Court noted, "Of course, the federal courts have power to investigate whether a judgment was obtained by fraud and make whatever modification is necessary, at any time." 331 U.S. at 476 n.4 (citing *Univeral Oil Products Co. V. Root Refining Co.*, 328 U.S. 575 (1946)).

Recently the Third Circuit Court of Appeals issued a decision in *United States v. Washington*, 2008 WL 5173327 (3rd Cir. Dec. 11, 2008), which differs with the Seventh Circuit's holding in *Bishop* and the statement in *Smith*. The decision in *Washington* effectively overrules *United States v. Gregg*, 2006 WL 2850564 E.D. Pa., Oct. 3, 2006), a case relied upon by the government in the case at hand. In the *Washington* case, the defendant repeatedly misrepresented himself as "Kennard Gregg," and the misrepresentation was not disclosed until after the time for correcting a sentence had passed under FED. R. CR. P. 35(a). Based on this misrepresentation, "Gregg's" criminal history category was two and the total offense level was nine, yielding a Sentencing Guidelines range of six to twelve months. Had Washington not misrepresented his identity and had his criminal history been properly calculated using his true record, his criminal history category would have been four and his offense level nine, yielding a Guidelines range of twelve to eighteen months. The district court issued an order vacating its original sentence and directing resentencing based on fraud upon the court. The Third Circuit issued a writ of mandamus instructing the district court to vacate its order vacating the original sentence.

-10-

In *Washington,* the Third Circuit held that a district court may modify its own criminal sentence only under specific statutory circumstances set forth in FED. R. CR. P. 35(a) and 18 U.S.C. § 3582(c). The Third Circuit further held that a district court lacks inherent power *sua sponte* to vacate its own criminal sentence based on fraud upon the court. The Third Circuit reasoned that "to the extent there might have at one point been inherent power in the court [to vacate a criminal sentence based on fraud upon the court], such power was abrogated by Congress pursuant to § 3582(c) and Federal Rule of Criminal Procedure 35(a)." 2008 WL 5173327 at *8.

Recently, this Court was asked to remand a case so the district court could vacate the sentence it imposed based on a defendant's misrepresentations and so the district court could resentence the defendant during the pendency of his appeal. In denying this request, this Court questioned "whether the district court has jurisdiction to resentence a defendant in the absence of statutory authority to do so." *United States v. Fincher*, 538 F.3d 868, 878 (8th Cir.2008).

We need not and will not determine in this case whether a district court has a historically recognized inherent power to vacate criminal judgments procured by fraud or whether such power has been abrogated by Congress, because even if this inherent power still exists any misrepresentations made in this case would not justify vacating the sentence. The power to vacate judgments procured by fraud must be exercised with restrain and discretion, *see Chambers* 501 U.S. at 44, and with consideration of the long established general rule that prohibits the alteration or setting aside of judgments after the expiration of the term when such judgments were finally entered. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322U.S. at 244. It must be shown by clear and convincing evidence that there was fraud on the court with all doubts being resolved in favor of the finality of a judgment. *Bulloch v. United States,* 763 F.2d 1115, 1121 (10th Cir. 1985). In addition, it is necessary to examine the nature of the alleged misrepresentation that is the impetus for vacating a judgment procured by fraud.

Fraud on the court which justifies vacating a judgment is narrowly defined as "fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Bulloch* at 1121; *see also, United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002). The standard for fraud on the court in the context of the court exercising its inherent powers under the principles of *Hazel-Atlas Glass* is higher and distinct from the more general standard for fraud under FED. R. CIV. P. 60(b)(3). A finding of fraud on the court under this standard "is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel . . . ." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998)(quoting *Landscape Properties, Inc. V. Vogel*, 46 F.3d 1416, 1422 (8th Cir. 1995)). Rules arising from the inherent powers of the courts have evolved to become exceedingly narrow, and to require that the power to set aside a judgment based upon fraud on the court involve the court actually being deceived by the misrepresentation. *See* Joseph J. Anclien, *Broader is Better: The Inherent Powers of Federal Courts,* 64 N. Y. U. Ann. Surv. Am. L., 37, 69 (2008).

While we do not condone anything less than full disclosure for defendants submitting financial forms as required by 18 U.S.C. § 3664(d)(3),[7] we do not believe that the nondisclosures that occurred prior to the original sentencing in Smiley's case constitute the "most egregious misconduct" so that the value of vacating the sentence outweighed the general principle supporting finality of judgments. The failure of

---

[7] 18 U.S.C. § 3664(d)(3) provides:
> Each defendant shall prepare and file with the probation officer an affidavit fully describing the financial resources of the defendant, including a complete listing of all assets owned or controlled by the defendant as of the date on which the defendant was arrested, the financial needs and earning ability of the defendant and the defendant's dependents, and such other information that the court requires relating to such other factors as the court deems appropriate.

Smiley to report the fractional interest in the Florida property that was subject to foreclosure proceedings as well as the failure to report judgments against her did not influence the district court to sentence outside the Sentencing Guidelines.[8] The debt versus equity information set forth in the original presentence report as well as the obviously chaotic state of Smiley's finances reveals the unlikelihood of Smiley paying restitution even though Smiley overstated her net worth.

After Counsel at the original sentencing hearing advised the district court that Smiley was committed to repaying every dime to her victims, the district court asked if there was a plan for doing so, and counsel advised that Smiley intended to work and that she was in a position to liquidate assets and secure additional loans. The district court was justifiably troubled about that misrepresentation. Smiley's sentencing memorandum, however, focused on Smiley's community service, commitment to family and unlikelihood of recidivism, not the ability or intention to make restitution, as the basis for a variance. In her allocution at the original sentencing Smiley made no reference to making restitution. Significantly, as was previously noted, the district court sentenced near the middle of the Guidelines range and did not grant the request for a variance.

Also, the record does not support by clear and convincing evidence the finding that Smiley misrepresented the relationship with her husband since the record establishes that Smiley's husband confirmed with the presentence writer that he and his wife had been separated for a time. In addition, the husband testified he had been uncooperative with Smiley in providing financial information to Probation. Assuming without deciding that the district court had the inherent power to set aside the original sentence, it was still an abuse of discretion to vacate the original sentence since the heightened standard for fraud on the court was not met in this case. The order

[8]The financial condition of Smiley did not impact the restitution that was owed under the Mandatory Victims Restitution Act since restitution is mandatory. *See United States v. Miller*, 419 F.3d 791, 794 (8th Cir. 2005).

vacating the original sentence and the subsequent sentence of seventy-two months of imprisonment are reversed and the matter is remanded with instruction to reinstate the original sentence.

*Disputed Restitution Amounts*

Smiley stipulated to the restitution amounts owed to all but seven victims. Smiley contends that the government failed to prove by a preponderance of evidence the disputed restitution amounts for these seven victims and claims that the Postal Inspector who testified regarding the restitution owed these victims accepted the amounts these victims stated they were owed without conducting an independent investigation of the amounts owed.

The government has the burden of proving the restitution amount by a preponderance of the evidence. *United States v. Young*, 272 F.3d 1052, 1056 (8th Cir. 2001). We review for clear error the district court's determination of the amount of restitution. *United States v. Fogg*, 409 F.3d 1022, 1028 (8th Cir. 2005). The transcript of the July 16, 2007 restitution hearing reveals that when the Postal Inspector interviewed the victims in issue regarding their losses for restitution purposes, most of these victims had reviewed their own bank records, records received from Smiley, and correspondence and notices from the Internal Revenue Service. Also, the victims were knowledgeable in business and tax matters, and the Postal Inspector had received records and information from some of the victims' legal representatives. In addition, the Postal Inspector instructed the victims to calculate their losses without adding in penalties and interest. The Government met its burden in proving the amount of restitution, and there is no clear error in the district court's determination of the amount of restitution.

### III. *Conclusion*

We conclude that even if a district court possesses a historically recognized inherent power to vacate a criminal judgment procured by fraud, the conduct in issue

which occurred before the original sentencing in this case does not fall within the narrow definition of "fraud upon the court" which is required to vacate a judgment. We reverse the order vacating the original sentence and the subsequent judgment sentencing Smiley to seventy-two months of imprisonment, but affirm the district court's order of restitution.

COLLOTON, Circuit Judge, concurring in the judgment.

Even assuming that a district court enjoys inherent power, in cases of fraud on the court, to vacate a judgment in a criminal case outside the limits established by 18 U.S.C. § 3582(c) and Federal Rule of Criminal Procedure 35(b), the court explains that "fraud on the court" must be "narrowly defined as 'fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.'" *Ante*, at 12 (quoting *United States v. Bulloch*, 763 F.2d 1115, 1121 (10th Cir. 1985)); *see also United States v. Throckmorton*, 98 U.S. 61, 65-67 (1878) ("The doctrine is . . . well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter that was actually presented and considered in the judgment assailed."); Commentary, *Effect of Rule 60b on Other Methods of Relief from Judgment*, 4 Fed. Rules Serv. 942, 945 (1941) ("[B]y the majority view intrinsic fraud, such as perjury or use of falsified documentary evidence, is not a ground for relief in federal courts."). Because the district court in this case relied exclusively on misrepresentations, incomplete disclosures, and failures to disclose by Angela Smiley during the pre-sentencing process and at her sentencing hearing, I concur in the court's judgment. Even application of the inherent power available in civil cases would not authorize the district court to vacate the judgment in this case, because there was no "fraud on the court" as defined in that context. I express no view on whether the evidence is sufficient to establish clearly and convincingly that Smiley made misrepresentations to the district court. I agree with the court's disposition of Smiley's challenge to the district court's order of restitution.

---